It seems paradoxical to speak of a union without unity. Yet, essentially, the present litigation is a quarrel within the family of the American Federation of Labor. A prompt determination of the present application will be more accommodating and serviceable to the parties and to those indirectly involved than a memorandum comprehensive of all the incidents disclosed by the proofs and stipulated facts. *Page 587 
Accordingly, a brief prefatory statement must for immediate purposes suffice to exhibit the cause and subject-matter of the controversy. In March, 1946, the Ford Motor Car Company began the erection of its Mercury-Lincoln Assembly Plant in Raritan Township, Middlesex County, New Jersey, at an estimated cost of approximately $8,500,000. The project required the services of many hundreds of craftsmen, including carpenters, millwrights, and iron workers.
The construction work progressed until in July, 1947, the time approached for the installations of the conveyor and mono-rail systems at an estimated cost of approximately $1,000,000. The controversial question thereupon arose whether the installation of those systems was in type and pattern a class of work to be performed by the members of the "Carpenters' Union" or by those of the "Iron Workers' Union."
It is said that at a meeting attended by a representative of the Carpenters' International and by representatives of the two local unions, Carpenters' Union and Iron Workers' Union, it was agreed "that the work * * * was to be done on a man-to-man basis, that is an equal amount of millwrights (Carpenters' Union) and an equal amount of iron workers * * * under the supervision of Garrett Smith, who was to place the men where he thought they would be best suited."
In any event, peace prevailed until about September 3d 1947, when the members of the Carpenters' Union inaugurated a "walk-out." Thereafter they resolved to return, whereupon on October 9th, 1947, the iron workers established a "lock-out," which they have successfully and continuously maintained against the carpenters.
The bill of complaint in this cause filed and prosecuted in conformity with the procedural requirements of the statute, R.S.2:29-77.3; N.J.S.A., does not invite me to determine the basic and fundamental "jurisdictional dispute" between the local unions. That issue has been introduced to the National Labor Relations Board.
In such a situation I venture to step somewhat out of bounds to recommend earnestly that some feasible so-called "spot agreement" be entered into, definitely without prejudice *Page 588 
to the adverse contentions of the respective disputants, and understood to be operative only ad interim until the decision of the jurisdictional dispute, all to the end that the construction work may advance and that local labor unions will not be charged with the sole responsibility for the costly delay.
I would conjecture that hostile discord between local labor unions is an internal illness that organized labor associations would desire to abate immediately. For associated local unions, provoked by an honest difference of opinion relative to the class of work, to draw picket lines against each other would seem to me to diminish the desired allied and concordant respect for the more conventional picket lines and eventually promote baneful consequences. It will be indeed lamentable if our existing over-abundance of employment generates adversities akin to those resultant from a scarcity of it.
Nonetheless, my present judicial duty is to determine whether in view of the dissentient and intolerant convictions of the local unions, the persistent lock-out as now maintained by the iron workers against the carpenters and millwrights is lawful, or subject to the injunctive interference of this court. The issue in that particular is neither intricate nor perplexing.
The defendants frankly concede that they have intentionally assembled and have purposefully maintained a line of pickets at the entrance to the project which by force of numbers has in accordance with their purpose effectively obstructed the members of the Carpenters' Union from entering the premises where they have available remunerative employment.
Assuredly this court, despite the statute of 1941, still retains its inherent power to afford protection to property rights which are being unlawfully and irreparably overthrown. The privilege to pursue one's business, vocation or profession is a property right. Barr v. Essex Trades Council, 53 N.J. Eq. 101;30 Atl. Rep. 881; Phelps Dodge, c., Corp. v. United, c.,America, 138 N.J. Eq. 3, 11; 46 Atl. Rep. 2d 453;
affirmed, sub nom. Westinghouse Electric Corp. v. United, c.,Workers, 139 N.J. Eq. 97; 49 Atl. Rep. 2d 896. *Page 589 
It is now generally recognized that picketing by the vismetus of great numbers is tantamount in its legal significance to that accomplished by the vis major of physical force. Picketing en masse can as here amount to intimidation. Keuffel Esser v. International Association of Machinists, 93 N.J. Eq. 429; 116 Atl. Rep. 9; Isolantite, Inc., v. United Electrical,c., 132 N.J. Eq. 613; 29 Atl. Rep. 2d 183; Westinghouse,c., Corp. v. United, c., America, 138 N.J. Eq. 44, 46;47 Atl. Rep. 2d 734. Picketing in such a manner to the injury of the property rights of others has been said to constitute a tort and cannot judicially be regarded as peaceful or lawful.Western Electric Co. v. Western Electric, c., Association,137 N.J. Eq. 489, 493; 45 Atl. Rep. 2d 695.
Here the unlawful character of the picketing practiced by the defendants is acknowledged, but the insistence of counsel for the defendants is that the complainants originated and intensified the basic jurisdictional dispute and by their own course of conduct superinduced the retaliatory action of which they now complain. The defendants invoke the equitable principle exemplified by the familiar maxim: "He that hath committed iniquity shall not have equity."
The maxim in its application has its limitations. It has its logical justification only in considerations of good conscience and natural justice. The inequity which deprives a suitor of a right to justice in a court of equity must be evil practice or wrong conduct in the particular matter or transaction in respect to which judicial protection or redress is sought. Neubeck v.Neubeck, 94 N.J. Eq. 167; 119 Atl. Rep. 26.
It must be realized that the principle is not employed out of regard for the defendant, but because of the unwillingness of the court to grant its aid in the particular circumstances of the given case. Good conscience and natural justice are the decisive factors. Prindiville v. Johnson Higgins, 93 N.J. Eq. 425;116 Atl. Rep. 785.
And so there are cases in which a court of equity in fulfillment of the reasons and objects of its creation and existence may in furtherance of natural justice protect the lawful *Page 590 
rights of the one who comparatively is the more innocent. 3 Pom.Eq. Jur. (5th ed.), § 942.
And, moreover, even when the parties have been found to be inpari delicto, equitable relief has at times been awarded on the ground that in the particular case public policy has been found to be best conserved by that course. Pendleton v. Gondolf,85 N.J. Eq. 308, 314; 96 Atl. Rep. 47. Would it be in the public interest even impliedly or inferentially to intimate to the complainants that their remedy is physically to overpower the resistance of the defendants by the enlistment of a regiment of superior force?
To be expeditious I shall not undertake to cite and discuss the many reported decisions relative to the application of the principle. It is my conclusion that in the particular circumstances of the present cause, the lawful property rights of the complainants should not be denied judicial consideration.
The proofs and the stipulated facts lead me to resolve:
(a) That the method of picketing pursued by the defendants is unlawful and injurious to the property rights of the complainants and is likely to be continued or renewed unless reasonably restrained;
(b) That efforts were exerted on behalf of the complainants (and defendants) to settle the basic dispute;
(c) That in the absence of some regulatory injunctive order, substantial and irreparable injury to the property rights of the complainants will ensue;
(d) That greater injury will be inflicted upon the complainants by a denial of appropriate restraint against the mass picketing than will be suffered by the defendants by the granting of such relief;
(e) That the complainants are without an adequate remedy at law;
(f) That the complainants are entitled to an injunctive order applicable to all of the defendants, including the defendant Hansen.
I will hear counsel concerning the definite and specific terms of the order. A more explicit finding of the facts will be prepared and filed. *Page 591