31 N.J. Super. 598 (1954)
107 A.2d 553
THE CITY OF PATERSON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ALBERT SCHNEIDER AND JACQUELINE SCHNEIDER, HIS WIFE, SCHNEIDER SILK MILLS, INC., AND ANNA SCHNEIDER, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued July 12, 1954.
Decided August 11, 1954.
*601 Before Judges LLOYD, WAESCHE and HANEMAN.
Mr. Saul M. Mann argued the cause for the appellants.
Mr. Ervan F. Kushner argued the cause for the respondent.
*602 The opinion of the court was delivered by HANEMAN, J.S.C. (temporarily assigned).
Plaintiff herein filed a complaint under N.J.S. 2A:62-1, 2A:62-20. Said statutes read as follows:
"2A:62-1. Any person in the peaceable possession of lands in this state and claiming ownership thereof, may, when his title thereto, or any part thereof, is denied or disputed, or any other person claims or is claimed to own the same, or any part thereof or interest therein, or to hold a lien or encumbrance thereon, and when no action is pending to enforce or test the validity of such title, claim or encumbrance, maintain an action in the superior court to settle the title to such lands and to clear up all doubts and disputes concerning the same."
"2A:62-20. A person in the peaceable possession of lands in this state, claiming ownership thereof in fee simple under a deed therefor, or by or under descent or devise from the grantee thereof, which deed contains no covenants, conditions or agreements for the forfeiture and payment of money or penalties on breach thereof, or restrictions therein, may, when it is claimed or asserted by anyone that such lands are subject to covenants, conditions or agreements for the forfeiture and payment of money or penalties on breach thereof, or restrictions, contained in earlier deeds in the chain of title, and no action is pending to enforce or test the existence or validity of such covenants, conditions, agreements or restrictions, maintain an action in the superior court to settle the existence and validity thereof, and to clear up all doubts and disputes concerning the same."
The facts in connection herewith are as follows: In 1946 the Legislature of the State of New Jersey enacted a statute (R.S. 55:14G-1), which provided for the construction of public housing. The plaintiff proceeded under this act to acquire the premises in question by an agreement with the then owners thereof and entered into a contract on June 10, 1947 for the construction, on said tract, of seven apartment houses, each seven stories in height, to accommodate 392 families. The construction was undertaken under the above cited statute and by virtue of an agreement with the State of New Jersey under which it agreed to contribute $1,392,000 and the plaintiff agreed to contribute $2,200,000 to the cost thereof. The land upon which this improvement was to be constructed is part of a large tract which, in 1927, was owned by a corporation known as the Chestnut Hill *603 Land Co. In that year the said tract was conveyed to another corporation known as Chestnut Hill Manor. The deed to Chestnut Hill Manor contained restrictive covenants which forbade, inter alia, the erection of buildings other than one-family dwellings costing $10,000 or more each, and provided for various set-backs from the street and sidewalk. Said restrictions were to expire after thirty years. By mesne conveyances the grantor of the City of Paterson acquired title to the property here involved. Plaintiff is obliged, by reason of the statute, to sell this project to private owners during the month of December 1954.
The plaintiff, at the time of the conveyance to it, had knowledge of the existence of the restrictive covenants, but upon the advice of its counsel determined to proceed with the improvement and construct the buildings in violation thereof.
At the time of the execution of the contract between the plaintiff and the State of New Jersey the former was obliged and did sign an indemnity agreement under which it agreed to save the State of New Jersey harmless from any and all damage resulting from a breach of said restrictive covenants.
The defendants are some of the owners of the balance of the lots in the tract encumbered by the restrictive covenants contained in the conveyance to Chestnut Hill Manor.
Much publicity through the press and public meetings was given to the intended construction by the plaintiff prior to its undertaking of the actual erection of the apartment houses. It is admitted by the defendants that they had actual knowledge of an intended violation prior to any actual violation by the plaintiff. They as well admit that they neither voiced any objection nor commenced any suit to enjoin the plaintiff from violating the restrictive covenants as aforesaid, and that their course of conduct in that respect would now bar and estop them from any relief in an affirmative suit seeking the enforcement of the restrictive covenants as against the plaintiff. The defendants do not, by way of affirmative defense, assert either the existence or validity of the restrictive covenants, nor do they seek their enforcement. They do, however, *604 seek to prevent the relief here sought by the plaintiff upon the theory (1) that since they are not affirmatively asserting any claim as against the plaintiff by reason of the restrictive covenants, the plaintiff has not met the statutory requirement to the filing of this suit and (2) that it comes into court with unclean hands.
It is not necessary that a plaintiff, seeking the relief provided in either of the two above cited statutes, show that there is an outstanding title or claim, or that a defendant asserts a hostile claim to the realty involved. All that is necessary is that the complaint demonstrate that it is claimed that there is some hostile outstanding right. The design of the statute was to put in the power of a person who is in peaceable possession of land as an owner a means to compel any other person who asserts a hostile right or claim, or who is reputed to hold such a hostile right or claim, to come forward and either disclaim or show his right or claim, and submit it to judicial determination.
The record here clearly discloses that there is or may be in existence a lien, encumbrance or restriction under which the defendants may claim a right by enforcement. It is sufficient that the plaintiff show that a deed in its chain of title prior to the conveyance to it contains a restrictive covenant. Southmayd v. City of Elizabeth, 29 N.J. Eq. 203 (Ch. 1878).
There is no dispute that the restrictive covenants here in question originally affected the plaintiff's lands. It is, however, contended by the plaintiff that as a result of the conduct of the defendants, they implicitly or tacitly agreed to the violation thereof in certain respects and thereby impliedly consented to the abandonment of such restrictions in the manner and to the extent that they were violated.
There can be no doubt that violations of restrictive covenants can constitute an abandonment of a neighborhood scheme, in whole or in part, and that such conduct may indicate an intent on the part of the property owners to abandon the original plan. Evans v. Rosenberg, 1 N.J. 590 (1949); LaFetra v. Beveridge, 124 N.J. Eq. 24 (E. & A. 1938).
*605 It therefore follows that where a complaint to quiet title is filed seeking a determination of whether restrictive covenants, admittedly affecting property of the plaintiff, have been abandoned, the statutory requirement to settle the existence and validity thereof has been met. The question of abandonment connotes a consideration of the continued existence and validity of such restrictive covenants.
The defendants seek to invoke the maxim of unclean hands upon the allegations that the plaintiff is guilty (1) of a knowing violation of the restrictive covenants, and (2) that it practiced a fraud upon the State of New Jersey by reason of its assurance of the unenforcibility of said restrictive covenants. Generally, the maxim "He who comes into equity must come with clean hands" is applied to one who is guilty of fraud or unconscionable conduct with respect to the particular controversy in issue. The alleged iniquitous conduct must be related proximately to the act of the party against whom it is related, and it must be an evil practice or wrongful conduct in the particular transactions in respect to which such party seeks redress. Tami v. Pikowitz, 138 N.J. Eq. 410 (Ch. 1946).
In Medical Fabrics Co. v. D.C. McLintock Co., 12 N.J. Super. 177 (App. Div. 1951), the court said as follows:
"The clean hands doctrine is an ethical concept long applied in courts of equity although not peculiar thereto. Chafee, Some Problems of Equity (1950), pp. 1, 94. In general, its requirement is not that suitors seeking relief in equity `shall have led blameless lives' (Loughran v. Loughran, 292 U.S. 216, 229, 54 S.Ct. 684, 689, 78 L.Ed. 1219, 1227 (1934)), but rather that they shall not have acted fraudulently or unconscionably with respect to the particular controversy in issue. Precision Instr. Mfg. Co. v. Automotive M. Mach. Co., 324 U.S. 806, 815, 65 S.Ct. 993, 89 L.Ed. 1381, 1386 (1945); Neubeck v. Neubeck, 94 N.J. Eq. 167, 170 (E. & A. 1922). When applicable it is invoked not out of regard for the defendant or to punish the plaintiff but upon larger considerations `that make for the advancement of right and justice.' Johnson v. Yellow Cab Transit Co., 321 U.S. 383, 387, 64 S.Ct. 622, 88 L.Ed. 814, 819 (1944). Cf. Casini v. Lupone, 8 N.J. Super. 362, 365 (Ch. Div. 1950); Hansen v. Local No. 373, 140 N.J. Eq. 586, 589 (Ch. 1947).
*606 While the doctrine is firmly rooted and naturally appeals to persons of good conscience, it may well disserve the interests of justice if applied oversensitively or as a rigid formula restraining the Court's just exercise of discretion. Precision Instr. Mfg. Co. v. Automotive M. Mach. Co., supra; Chafee, supra, p. 99. Accordingly, there has been a recent wholesome tendency amongst courts to apply the doctrine flexibly in the light of the particular circumstances presented. See 60 Harv. L. Rev. 980, 981 (1947); Rasmussen v. Nielsen, 142 N.J. Eq. 657, 661 (E. & A. 1948); A. Hollander & Son, Inc., v. Imperial Fur Blending Corp., 2 N.J. 235, 247 (1949); Hansen v. Local No. 373, supra."
This doctrine has its logical justification only in consideration of good conscience and natural justice. And even when parties have been found in pari delicto relief has been awarded on the ground, in the particular case, that public policy has been best conserved by that course. The maxim is not so rigid in its application that it may not be relaxed in the interest of fairness and justice. Tami v. Pikowitz, supra; Hansen v. Local No. 373, 140 N.J. Eq. 586 (Ch. 1947); Rasmussen v. Nielsen, 142 N.J. Eq. 657 (E. & A. 1948); Casini v. Lupone, 8 N.J. Super. 362 (Ch. Div. 1950); Laurino v. Laurino, 28 N.J. Super. 119 (App. Div. 1953); A. Hollander & Son, Inc. v. Imperial Fur Blending Corp., 2 N.J. 235 (1949).
In the case sub judice it is to be noted that the plaintiff was not guilty of any fraudulent or unconscionable conduct insofar as these defendants are concerned. There was nothing secretive or surreptitious about the manner in which it proceeded to violate the restrictive covenants. Actually it gave public notice to the entire community of its intention to so violate said restrictive covenants. The defendants had advance notice of this avowed intent. In spite of such notice they saw fit to sit supinely by and permit the plaintiff to undertake the obligation to expend millions of dollars without one word of protest or one objection to its contemplated conduct. They thereby impliedly consented to the violation and to the partial abandonment of the restrictive covenant.
A restrictive covenant, such as we are here dealing with, is a contract. Weinstein v. Schwartz, 3 N.J. 80 (1949).
*607 The most that can be said for the defendants' position is that since the plaintiff has, in part, breached the contract with the defendants, the plaintiff shall be denied all relief in this court upon the grounds that this sullies the plaintiff's hands. It is apparent that there must be more present than a partial breach of a contract to deny a party relief upon the unclean hands maxim, especially where there is, as here, an implied consent to such breach. Plaintiff's conduct, insofar as its relation to defendants is concerned, does not constitute it guilty of unclean conduct.
Insofar as the plaintiff's contract and conduct with the State of New Jersey is concerned, it is patent that not only was the plaintiff not guilty of any fraudulent or unconscionable conduct, the State having had knowledge of the existence of the restrictive covenants, but that this transaction, as well, is not the contract with which we are now concerned. The unclean hands doctrine does not call into consideration whether the plaintiff was guilty of any reprehensible conduct with any person other than the defendants. It does not banish all sinful suitors from the court of equity. It must, as above noted, be related to the act of the plaintiff which is the subject matter of the cause of action, and it must be an evil practice or wrongful conduct in the particular transaction in respect to which the plaintiff seeks redress. Plaintiff's conduct and contract with the State of New Jersey is neither fraudulent nor unconscionable nor concerned with the particular transaction which is the subject matter of this suit. The maxim of unclean hands is inapplicable in this action as far as the plaintiff's conduct and contract with the State of New Jersey is concerned.
The judgment is affirmed.