78 N.J. Super. 520 (1963)
189 A.2d 467
ISIDORE FELDMAN, PLAINTIFF AND THIRD-PARTY PLAINTIFF,
v.
URBAN COMMERCIAL, INC., AND OTHERS, DEFENDANT.
ISIDORE FELDMAN, THIRD-PARTY PLAINTIFF,
v.
THE TITLE GUARANTEE COMPANY, THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided March 25, 1963.
*522 Messrs. Brogan and Wolff for third-party plaintiff (Mr. Henry F. Wolff, Jr., of counsel).
Messrs. Carpenter, Bennett & Morrissey for third-party defendant (Mr. Elmer J. Bennett, of counsel).
PASHMAN, J.S.C.
This is a third-party action on a title insurance policy and is the third time that Mr. Feldman has been before this court. A brief resume of the factual background is necessary for an understanding of the present action.
Prior to October 25, 1955 the Jersey City Redevelopment Agency (herein called Agency) procured the title to property in Jersey City known as the St. John's Project Area (herein called the Project Area). This purchase was under the authority of Title 1 of the Housing Act of 1949, as amended, 42 U.S.C.A., § 1441 et seq., and of the Redevelopment Agencies Law, N.J.S.A. 40:55C-1 et seq. On October 25, 1955 Urban Developers, Inc. (herein called Developers) entered into a redevelopment contract with Agency to develop said project area.
On June 11, 1956 Agency conveyed two tracts of said project area to Developers, one tract to be redeveloped as a business area and the other to be redeveloped as a residential area. Developers subsequently conveyed the business area tract to Urban Commercial, Inc. (herein called Commercial), *523 the stockholders in the two corporations being identical. Commercial then executed and delivered a Note in the face amount of $450,000, "or so much thereof as may be advanced," secured by a mortgage upon the business area to the third-party plaintiff, Isidore Feldman (herein called plaintiff).
Plaintiff advanced $250,000 on the mortgage, which was paid over to Agency as the consideration for the conveyances of the residential and business tracts. Of this sum $148,254.59 was utilized for the purchase of the business area and the remainder was used to purchase the residential area. Plaintiff made additional advances in late 1956 totaling $100,000.
On April 2, 1958 plaintiff's mortgage was past due and in default. Plaintiff agreed to a modification with Commercial, extending the due date to January 11, 1959. The extension agreement provided that the principal amount due on the mortgage should be increased from $350,000 to $392,000.
On February 12, 1959 both Commercial and Developers were in default of their obligations under the redevelopment contract with Agency and in breach of a covenant requiring completion of the buildings and improvements in the project area within 32 months from the date of conveyance. Plaintiff had knowledge that said buildings and improvements had not been completed.
On March 20, 1959 Agency declared Commercial to be in default and so notified it. On July 22, 1959 Agency purchased all of Developer's right and interest in its contract of October 25, 1955 at an execution sale.
On October 23, 1959 plaintiff filed his complaint to foreclose his mortgage, Commercial being in default of its obligations. Plaintiff joined Agency in his foreclosure suit, and Agency counter-claimed for a declaration that the mortgage was null and void because in violation of both deed restrictions and federal and state law. Plaintiff also filed a third-party complaint against The Title Guarantee Company, the insurer of said mortgage and present third-party defendant *524 (herein called defendant). A more detailed statement of the facts can be found in the opinions of Judge Kilkenny and Judge Collester in Feldman v. Urban Commercial, Inc., 64 N.J. Super. 364 (Ch. Div. 1960), and Feldman v. Urban Commercial, Inc., 70 N.J. Super. 463 (Ch. Div. 1961), respectively.
Upon an agreed statement of certain facts and upon motion and cross-motion for partial summary judgment, two questions were presented to Judge Kilkenny for determination prior to a determination on the merits. The first question before Judge Kilkenny was whether the mortgage transaction between Commercial and plaintiff was violative of a provision in both the deeds to the property and the redevelopment contract to the effect that there should be no sale, leasing, transfer or conveyance of the property prior to the actual completion of the redevelopment plan, unless the Agency or its successors or assigns gave prior written consent.
Judge Kilkenny held that the mortgage transaction was not violative of the provision in the deeds and redevelopment contract "as of this time." However, he did hold that if the plaintiff proceeded in his foreclosure action to the point of an execution sale and transfer of title to the property, such transfer would violate the said provision and Agency would be entitled to a reconveyance.
The second question submitted to Judge Kilkenny on the motion and cross-motion for partial summary judgment was:
"B. Whether the default against the terms, conditions and covenants of the contract and deeds relating to the time for completion of construction entitles Agency to compel a reconveyance of the premises to it, unencumbered by any lien of plaintiff's mortgage?" 64 N.J. Super., at p. 372.
The court answered this question in the affirmative, subject, however, to an equitable lien against the property in favor of plaintiff in the amount of $148,254.59  the sum of money which was used for the acquisition of the business area property.
*525 In the trial on the merits before Judge Collester plaintiff contended that Agency was estopped from attacking the validity of and plaintiff's right to foreclose his mortgage on the following grounds: (a) knowledge on the part of Agency of the execution of the mortgage, (b) consent to the making of the mortgage, (c) waiver and (d) laches. Judge Collester held that none of the above contentions had merit. The court also found that plaintiff did not come into equity with clean hands. In holding that plaintiff's action to foreclose his mortgage in the principal sum of $392,000 (subject to a lien of $148,254.59) was barred since he did not come into equity with clean hands, Judge Collester said:
"It is clear that Feldman knew if he placed a mortgage lien on the residential area, no F.H.A. construction mortgages could be obtained thereon unless his mortgage was subordinated. The mortgage transaction thus created was designed to keep the residential area `free and clear.'
Feldman also knew that only $148,254.59 of the original $250,000 advanced under the mortgage loan went into the purchase of the business area, and that the remainder of the $250,000 was to pay for the residential area. He also knew that subsequent advancements made by him, totaling $100,000 during the six-month period following the execution of the $450,000 mortgage, were expended to develop the residential tract. No improvements were ever made on the business area. * * *
Plaintiff's admitted objective was `maximum security' for his investment. * * * His plan was to insure against any loss on the mortgage loan by subjecting the business area to the full brunt of his investment in the entire redevelopment project. * * *
The underlying concept of plaintiff's plan is unconscionable. The scheme was designed to have Feldman protected for his lost gamble at the expense of Agency. His idea was that in the event of a debacle, such as in fact did occur, he would be able to take over the business area in fee, free and clear of everybody, including Agency or require Agency, in order to save its redevelopment plan to pay over to plaintiff $392,000, his gamble, to clear a piece of property which had been sold for only $148,254.59." 70 N.J. Super., at pp. 480, 481.
The question of defendant's liability on the title policy insuring plaintiff's mortgage had been severed from the previous two trials and is now before me. The defendant's liability depends upon a determination of the following issues:
*526 (1) What is the nature of the rights and obligations of the parties with respect to the policy of mortgage insurance, and the exceptions, conditions and stipulations contained therein?
(2) Is the plaintiff precluded from recovering on the policy by reason of an alleged failure to give proper and timely notice to the defendant?
(3) Is the plaintiff barred from recovering from the defendant by reason of his alleged unclean hands and unconscionable scheme with respect to the mortgage transaction with Commercial?
I shall briefly dispose of the second issue in this case at the outset. Defendant contends that plaintiff is precluded from recovering on the policy insuring the mortgage in question for failure to give proper and timely notice to defendant insurer under the "Conditions and Stipulations" in the policy. However, defendant has not substantially argued the question in its brief or at trial. In any case, there does not seem to be any question but that defendant was given proper and timely notice of the alleged defect in the mortgage pursuant to the terms of the policy.
The title policy issued by defendant to plaintiff insured plaintiff against loss (not exceeding $450,000) created, inter alia, "by reason of the invalidity of the lien [mortgage] thereof upon said land, * * * or by reason of any defect in, or lien or encumbrance on said title at the date hereof, * * *," other than "defects, liens, encumbrances and other matters" set forth in Schedule B. That schedule contains two items which the policy purports to exclude from coverage:
"1. Restrictions as in deeds to Urban Developers, Inc.
2. Liability under this policy is limited to the amount actually advanced."
The various clauses in the deeds to Developers provide, inter alia, that (a) the land, buildings and improvements thereon shall be used in accordance with the Amended Redevelopment Plan for the Project Area, and (b) there be no agreements, leases or conveyances in the sale, lease or occupancy of the *527 land containing racial restrictions. One other paragraph is set forth in full because it is relevant to a determination of this case:
"c: The party of the second part [Developers], for itself, its successors and assigns further covenant not to sell, lease, transfer or convey any of the land and premises hereinbefore described prior to the actual completion of all of the buildings and development operations as provided in the said Redevelopment Plan and pursuant to the agreement between the parties herein without prior written consent of the party of the first part [Agency], its successors and assigns."
The deed also contained a provision that redevelopment had to be completed within 32 months. There were further "Conditions and Stipulations" in the policy which are relevant to a determination of this case and they will be discussed infra.
It is undisputably clear that a policy of insurance must be liberally construed in favor of the insured. Any ambiguities must be strictly construed against the insurer. Sandler v. N.J. Realty Title Ins. Co., 36 N.J. 471 (1962); Matits v. Nationwide Mutual Ins. Co., 33 N.J. 488 (1960); Kievit v. Loyal Protect. Life Ins. Co., 34 N.J. 475 (1961); Comment, 16 Rutgers L. Rev. 196 (1961). As the court stated in Kievit, at p. 482:
"When members of the public purchase policies of insurance they are entitled to the broad measure of protection necessary to fulfill their reasonable expectations. They should not be subjected to technical encumbrances or to hidden pitfalls and their policies should be construed liberally in their favor to the end that coverage is afforded `to the full extent that any fair interpretation will allow.'"
A title insurance policy "is subject to the same rules of construction as are other insurance policies." Sandler v. N.J. Realty Title Ins. Co., supra, at p. 479. It is within these rules of construction that this policy must be construed.
Defendant contends that plaintiff's loss was occasioned by restrictions excepted from coverage in Schedule B of the title policy. The question is whether the provision in the deed to Developers that redevelopment had to be completed *528 within 32 months is a "restriction." Judge Kilkenny held that this provision was a "condition" and "more than a mere covenant." 64 N.J. Super., at p. 378. The word "restriction" as used in the title policy cannot be said to be synonymous with a "condition." A "restriction" generally refers to "a limitation of the manner in which one may use his own lands, and may or may not involve a grant." Kutschinski v. Thompson, 101 N.J. Eq. 649, 656 (Ch. 1927). See also Bertrand v. Jones, 58 N.J. Super. 273 (App. Div. 1959), certification denied 31 N.J. 553 (1960); Freedman v. Lieberman, 2 N.J. Super. 537 (Ch. Div. 1949); Riverton Country Club v. Thomas, 141 N.J. Eq. 435 (Ch. 1948), affirmed per curiam, 1 N.J. 508 (1948). It would not be inappropriate to say that the word "restrictions," as used by defendant insurers, is ambiguous. The rules of construction heretofore announced must guide us in an interpretation of this policy. I find that the word "restrictions" in Schedule B of defendant's title policy does not encompass the provision in the deed to Developers which refers to the completion of redevelopment work within 32 months because (1) the word is used ambiguously and must be strictly construed against defendant insurer, and (2) the provision does not refer to the use to which the land may be put. As the court stated in Riverton Country Club v. Thomas, supra, at p. 440, "equity will not aid one man to restrict another in the uses to which he may put his land unless the right to such aid is clear, and that restrictive provisions in a deed are to be construed most strictly against the person or persons seeking to enforce them." (Emphasis added)
Prior to the issuance of the title policy, defendant issued a "Certificate and Report of Title" in connection with its title search. The certificate contained a provision that it was to be null and void "(2) if the applicant, his attorney or agent makes any untrue statement with respect to any material fact or suppresses or fails to disclose any material fact or if any untrue answers are given to this company to material inquiries before the issuance of this certificate." *529 Defendant does not seriously urge that the certificate was merged with the final policy, but does contend that other language of the certificate should be considered by this court as revealing the meaning of the word "restrictions." Defendant also intimates that plaintiff has suppressed material facts and should be precluded from recovery on this ground alone.
It cannot be disputed that both insured and insurer must deal with each other in good faith. Merchants Ind. Corp. v. Eggleston, 37 N.J. 114 (1962); Gallagher v. New England Mut. Life Ins. Co. of Boston, 19 N.J. 14 (1955). Defendant would have had plaintiff announce that his mortgage was an unconscionable scheme. Although this is what Judge Collester ultimately found, defendant is asking for too much. As plaintiff aptly put it  no one had a crystal ball in 1956.
To begin with, I find that defendant had constructive notice of the redevelopment contract between Agency and Developers which provided for reconveyance of the property if the redevelopment construction was not completed within 32 months. Constructive notice can be imputed to defendant because the redevelopment contract is specifically referred to in the deed from Agency to Developers. Defendant also had knowledge, at the time of the closing, that more money had been advanced under the mortgage than was paid for the business area property. Thus, it was incumbent upon defendant, as an expert, to evaluate the risk which it contemplated insuring by marshalling all the knowledge that it had acquired, either actual or constructive. It does not appear that defendant inquired into the intricacies of the mortgage transaction. If it desired this information it had a duty to ask for it. As Chief Justice Weintraub stated in Merchants Ind. Corp. v. Eggleston, supra, at p. 122:
"Good faith demands that the insurer deal with laymen as laymen and not as experts in the subleties of law and underwriting. The insurer knows what it deems to be material to the risks. It should ask for the information in understandable terms, * * *."
*530 It is true that plaintiff is an accountant and has a law degree, but defendant holds itself out as expert in title insurance.
I do not reach the question of whether defendant can prevail if it asked for information and received false answers. Nor do I reach the issue of what would happen if the final agreement (title policy) between the parties did in fact contain the language "suppresses or fails to disclose any material fact" or words of similar import. See, e.g., First Nat. Bank & Trust Co. of Port Chester, N.Y. v. New York Title Ins. Co., 171 Misc. 854, 12 N.Y.S.2d 703 (Sup. Ct. 1939); Glickman v. Home Title Guaranty Company, 15 Misc.2d 167, 178 N.Y.S.2d 281 (Sup. Ct. 1958), affirmed 8 App. Div.2d 629, 185 N.Y.S.2d 756 (App. Div. 1959), appeal denied 8 App. Div.2d 827, 190 N.Y.S.2d 333 (App. Div. 1959), appeal dismissed, 7 N.Y.2d 717, 193 N.Y.S.2d 453, 162 N.E.2d 635 (Ct. App. 1959); 9 Appleman, Insurance, § 5205 (1943).
Generally, preliminary contractual negotiations like an executory agreement for the sale of land merge in the respective contract or deed as a final embodiment of the rights and duties of the parties. Dieckman v. Walser, 114 N.J. Eq. 382 (E. & A. 1933). However, in some cases where the parties have entered into several agreements, the primary consideration is the intention of the parties, as to which agreement or agreements are to govern. See Rosenberg v. D. Kaltman & Co., 28 N.J. Super. 459 (Ch. Div. 1953). A reading of the certificate leaves no doubt in my mind that it was intended to be a preliminary document to be entirely superseded by the issuance of the title policy. The certificate contains language to the effect that "This certificate shall be null and void * * * (3) upon the delivery of the policy. Any claim arising by reason of the issuance of this certificate shall be restricted to the terms and conditions of the standard policy of insurance." (Emphasis added.) The entire tenor of the certificate looks to the future. Upon the legal principles heretofore discussed, the wording and language of the certificate has no bearing on the question of the meaning of *531 the word "Restrictions" as used in the final policy, or on the issue of suppression of any material facts.
However, a complete reading of the final policy of title insurance impels me to conclude that plaintiff's claim is devoid of merit. Paragraph 8 of the "Conditions and Stipulations" of the policy exempts from coverage:
"* * * defects, claims or encumbrances created or suffered by the Insured claiming such loss or damage, or existing at the date of this Policy and known to the Insured claiming such loss or damage at the date such Insured claimant acquired an insurable interest but not known to the Company or disclosed to it in writing by the Insured."
As to the second phrase relating to defects, claims or encumbrances existing at the date of the policy and known to the insured but not known to the insurer, I have already stated that defendant had constructive notice of all the factors, which it, in its expertise, was bound to evaluate relative to the risk undertaken. Thus, it cannot be said that the facts which were ultimately found to have created the defect in plaintiff's mortgage were not known to the defendant, at least constructively. Plaintiff's recovery is barred, however, because his loss is based on a defect "created or suffered" by him within the meaning of the first phrase of the paragraph 8 exception. A fair reading of the policy, bearing in mind the rules of construction which must guide the interpretation of this policy, leads me to the conclusion that the word "or" is used according to its "plain meaning" as well as its legal meaning, i.e., in the disjunctive. Black defines "or" as "A disjunctive particle used to express an alternative or to give a choice of one among two or more things." Black's Law Dictionary (4th ed. 1951), p. 1246. Thus, the question of knowledge on the part of the defendant is immaterial to any issue raised by the first phrase of the quoted exceptions in paragraph 8, to wit, "created or suffered."
In First Nat. Bank & Trust Co. of Port Chester, N.Y. v. New York Title Ins. Co., supra, a mortgagee sued on a title *532 policy after his mortgage was held to be invalid as a preference under the Bankruptcy Act. The court ruled that the plaintiff mortgagee could not recover because of affirmative misrepresentations of material facts. The language of the policy also contained an exception similar to the one in the policy in the case sub judice. The court equated the word "suffer" with "permit" and found that plaintiff did not permit the defect to arise. The court ruled that "The word `created' had reference to some affirmative act on the part of the bank [plaintiff] itself. The bank took the mortgage but it did not create the defect. That was created by operation of law." Ibid., at p. 709.
In Brick Realty Corp. v. Title Guarantee & Trust Co., 161 Misc. 296, 291 N.Y.S. 637 (N.Y. City Ct. 1936), plaintiff brought an action against the insurance company to recover expenses incurred in defending a suit alleging a fraudulent scheme in procuring the deed. Even though plaintiff (defendant in the fraud suit) was found not liable, the court denied recovery against the title company for plaintiff's litigation expenses, saying:
"This defendant did not insure plaintiff against the consequences of its own acts, was not liable for any loss occasioned thereby, and was not obliged to defend any suit attacking plaintiff's title, even though entirely unfounded, if based upon acts claimed to have been committed by plaintiff." (at p. 638)
Similar reason was employed in Rosenblatt v. Louisville Title Co., 218 Ky. 714, 292 S.W. 333 (Ct. App. 1927), where the title policy excepted from coverage defects "created by the act or with the privity of the insured." The court ruled that the language of the policy did not indemnify against defects caused by the insured's fraud in procuring the deed.
Although it is true that the defect in plaintiff's mortgage was, in a sense, created by operation of law, it is also true that the existence of the defect was suffered by the affirmative acts of the plaintiff. Judge Collester has found that plaintiff did not come into equity with clean hands and that the *533 entire mortgage transaction was an unconscionable scheme. Plaintiff has not appealed these findings and they must be considered the law of the case. Judge Collester, in his decision, considered Judge Kilkenny's prior determination "the law of the case." Plaintiff's actions undoubtedly constitute such affirmative acts so as to preclude him from recovery, since he can be said to have "created or suffered" the defect in his mortgage within both the exceptions to the policy and the general principle that no man may be permitted to profit from his own wrongdoing.
Plaintiff argues that the maxim "he who comes into equity must come with clean hands" is only applicable as between the particular parties and in reference to the transaction to which judicial protection or relief is sought. Although it is a general statement of the law, City of Paterson v. Schneider, 31 N.J. Super. 598 (App. Div. 1954); Casini v. Lupone, 8 N.J. Super. 362 (Ch. Div. 1950); Tami v. Pikowitz, 138 N.J. Eq. 410 (Ch. 1946), the maxim will be applied if the misconduct is connected with the matter in litigation "so that it has in some measure affected the equitable relations subsisting between the two parties, and arising out of the transaction." 2 Pomeroy, Equity Jurisprudence (5th ed. 1941), § 399, p. 95. Cf., Brick Realty Corp. v. Title Guarantee & Trust Co., supra and Rosenblatt v. Louisville Title Insurance Co., supra. I find that there is a sufficient nexus between the party litigants so that the law of the case, as found by Judge Collester, will estop plaintiff from pursuing his claim.
For the above reason and because plaintiff can be said to have "created or suffered" the defect in his mortgage within the meaning of the exceptions to the title insurance policy, plaintiff's third-party complaint must be dismissed.
Judgment may be presented in accordance herewith consented as to form or settled on notice.