RESEARCH LOAN AND INVESTMENT CORPORATION, Plaintiff,

v.

LAWYERS TITLE INSURANCE CORPORATION, Defendant.

No. 1960.

United States District Court
W. D. Missouri, S. D.
Jan. 14, 1964.

B. H. Clampett, Walker, Daniel, Clampett, Rittershouse & Ellis, Springfield, Mo., for plaintiff.

Jack Powell, Mann, Walker, Powell, Burkart & Weathers, Springfield, Mo., for defendant.

JOHN W. OLIVER, District Judge.

Pursuant to various pre-trial orders the parties have filed a stipulation of facts and legal briefs in order that the Court may indicate its intended trial ruling on several of the legal questions that will be presented in this not uncomplicated litigation.

The parties have agreed that none of the five deeds of trust were excepted from the coverage of the policy; that each were matters of record at the time the policy was issued; that plaintiff had actual notice of the existence of the $70,000 deed of trust in favor of Inglis Mortgage Company (although plaintiff believed that the pay-off figure for that mortgage was only $56,000, rather than $61,000, plus interest, which in fact it was); and that there is a dispute of fact as to whether plaintiff had actual notice of the deeds of trust other than the $70,000 Inglis deed of trust.

The parties also stipulated in paragraph XIV that:

"Defendant concedes that, so far as it now knows, plaintiff made no affirmative misrepresentations in obtaining the policy of title insurance. So far as defendant now knows, the element of misrepresentation is tied to the matter of plaintiff's actual notice of the deeds of trust, if so, and to its silence in failing to disclose them."

The incorporation of paragraphs 3, 9, and 10 of the policy into paragraph 8 of defendant's answer and defendant's reiteration of paragraph 10 of the policy in paragraph (2) of Count I of the counterclaim supports the stipulated conclusion that "the element of misrepresentation is tied to the matter of plaintiff's actual notice of the deeds of trust, if so, and to its silence in failing to disclose them".

Count II, predicated on a theory of unilateral mistake, may also be broadly said to be tied into defendant's general theory of defense. This memorandum will indicate how the questions raised by defendant's broad theory of defense will be ruled at trial.

The particular paragraphs of the title insurance incorporated into the pleadings are as follows:

"3. Nothing contained in this Policy shall be construed as insuring against loss or damage by reason of fraud on the part of the Insured; or by reason of claims arising under any act, thing, or trust relationship done, created, suffered or permitted by the Insured; or by reason of the fact that the Insured was not a bona fide purchaser for value without notice, or that the acquisition of the estate or interest hereby insured contravened the laws of the United States establishing an uniform system of bankruptcy; or against the rights of dower, curtesy, or homestead, if any, of the spouse of the Insured; nor will the Company be liable in any event for any loss or damage arising from the refusal of any party to carry out any contract to purchase; lease or loan money on the estate or interest insured."

\* \* \*

"9. Defects and encumbrances arising after the effective date of this Policy, or created, suffered, assumed or agreed to by the Insured,

and taxes and assessments which have not become liens up to the effective date of this Policy, or which, although they have become liens, are not payable until some future date, or in future installments, are not to be deemed covered by this Policy; and no approval of any transfer of this Policy shall be deemed to make it cover any such defect, encumbrance, taxes or assessments.

"10. Any untrue statement made by the Insured, or the agent of the Insured, with respect to any material fact; any suppression of or failure to disclose any material fact, any untrue answer by the Insured, or the agent of the Insured, to material inquiries before the issuing of this Policy, shall void this Policy."

We must paint with a relatively wide brush because the stipulation is not definitive concerning all of the facts of this case. It is apparent from the reservation of defendant in the stipulation, couched in the language of "so far is it now knows", that additional facts not now known may be developed at trial.

We may and shall, however, determine whether the admitted actual knowledge of the plaintiff in regard to the $70,000 Inglis deed of trust (and alleged actual or constructive knowledge of the other deeds of trust) placed any duty on the plaintiff to speak, as defendant argues, and whether or not plaintiff's silence affords any legal defense under one or all of the pleaded paragraphs of the policy. We shall also discuss whether, on the presently stipulated facts, defendant is entitled to have the policy reformed to correct its unilateral mistake.

It is our present opinion that unless defendant is able at trial to adduce facts in addition to those stipulated, defendant can not legally sustain any of its pleaded defenses.

This memorandum does not discuss or determine the obvious additional questions that relate to the measure or the amount of plaintiff's damages, whether those questions might be legally affected by the amount of consideration involved in the various transfers of the property, or whether the determination of those questions might be affected by possible equitable considerations.

On the general question of damages, we do no more than indicate that regardless of how grossly and culpably negligent defendant may have been to have permitted what evidently happened to have happened, we do not believe that defendant should be punished and that plaintiff's recovery must be based on its actual damages, whatever they may be.

In spite of the somewhat narrow scope and tentative nature of this memorandum, we nevertheless believe it will serve a useful purpose in that the parties will be advised of our analysis of their broad theories and of our view of the cases upon which each intend to rely at trial.

Neither party has intimated that the controlling law of Missouri is peculiarly different from that stated in the cases generally. What little authority exists in Missouri is consistent with the rules of decision announced elsewhere. In fact, the early case of Purcell v. Land Title Guarantee Co., (1902) 94 Mo.App. 5, 67 S.W. 726, and the still earlier case of Minnesota Title Ins. & Trust Co. v. Drexel, (8th Cir.1895), 70 F. 194, decided by a strong panel of the Eighth Circuit, are relied upon by the Court of Appeals of New York in Empire Development Co. v. Title Guarantee & Trust Co., (1918) 225 N.Y. 53, 121 N.E. 468. The last case is one of the leading cases in the country.

■ Empire Development Co. establishes that "mere knowledge of a defect by the insuring owner would not constitute a defense" to an action on a title insurance policy. That comparatively early case examined the purpose and object of a title insurance policy. It first noted that "[t]o a layman a [title] search is a mystery, and the various pitfalls that may beset his title are dreaded, but unknown". It then held that:

"To avoid a possible claim against him, to obviate the need and expense of professional advice, and the un-

certainty that sometimes results even after it has been obtained, is the very purpose for which the owner seeks insurance".

That case continued:

"A title insurance policy is much in the nature of a covenant of warranty or a covenant against incumbrances. Here we have held that knowledge is immaterial. We see no reason for applying a different rule as to such a policy".

First National Bank & Trust Co. of Port Chester v. New York Title Ins. Co., (1939) 171 Misc. 854, 12 N.Y.S.2d 703, is one of the progeny of Empire Development Co. That case, unlike this one, involved an affirmative misrepresentation of a material fact of a matter not of record. It also involved an instance of non-disclosure, but the non-disclosure was so closely related to the affirmative misrepresentation that the non-disclosure was not and cannot be considered in isolation.

The title insurance policy involved in that case contained a clause identical to paragraph 10 of the policy involved in this case (see page 715 of 12 N.Y.S.2d). That case noted that it was well settled that if "a title insurance policy so provides, the suppression of a material fact will void the policy". But it is quite probable that the same consequence would follow even if a particular policy did not contain such a clause. Neither the existence of such a clause nor the existence of such a rule of decision suggests that either are applicable to the stipulated factual situation involved in this case which states that the insured "made no affirmative misrepresentations in obtaining the policy of title insurance".

■ All that presently can be said to be involved on the stipulated facts is that the plaintiff did not advise the defendant of the fact that five deeds of trust were matters of record at the time the policy was issued. New York Title Ins. Co. makes clear that any alleged "failure to state the truth" must be predicated upon a violation of a "duty to speak". That case held that "the question is whether failure to state the truth *where there was a duty to speak* prevented the insurance company from exercising its choice of whether to accept or reject the application upon a disclosure of all the facts which might reasonably affect its choice" (emphasis ours) (l. c. 715 of 12 N.Y.S. 2d).

■ The law does not impose any duty upon an applicant for title insurance to do the work of the title insurance company as it relates to searching the record. A purchaser of title insurance buys a policy of title insurance because, as stated in New York Title Ins. Co., "the quality of a title is a matter of opinion, as to which even men learned in the law of real estate may differ." A title insurance policy is purchased because it reflects "the opinion of the company * * * as to the validity of the title, backed by an agreement to make that opinion good, in case it should prove to be mistaken, and loss should result in consequence to the insured" (l. c. 710 of 12 N.Y.S.2d).

To hold that an insured must at his peril advise a title insurance company of defects apparent on the face of the record at the time the policy is issued would afford an absolute defense in every action on a title insurance policy in cases where defects of record were known to the insured but not to the insurance company. We know of no authority that suggests that such a principle is tenable; we shall not be the first court to introduce such a concept into the law.

On the facts, New York Title Ins. Co. held for the title insurance company because there were many material facts not of record that were both misrepresented and concealed. We would have concurred in the application of the law to the facts there involved. But the stipulated facts in this case command a different result.

■ Maggio v. Abstract Title & Mortgage Corp., 277 App.Div. 940, 98 N.Y.S. 2d 1011 (1950), another case that applied the rationale of Empire Development Co., also points up the full reason why one purchases a title insurance policy. If an individual only employs an attorney

to make a title search, and should the attorney's opinion be wrong, such an individual could recover damages (assuming the solvency of the attorney) only if he could show he relied upon the search. If such a person had knowledge of a defect of record before he employed the attorney he could not in any event recover because, as stated in Maggio, "[k]nowledge of the facts precludes recovery for the reason that there was no reliance upon the search and the damage was not thereby occasioned." But, as title insurance companies point out in their advertisements, such is not the case if one purchases a title insurance policy. In the latter instance, Maggio correctly states that:

"In the case of a title insurance policy, the insurer undertakes to indemnify the insured if the title turns out to be defective. That is the purpose of procuring the insurance and knowledge of defects in the title by the insured in no way lessens the liability of the insurer. The doctrine of skill or negligence has no application to a contract of title insurance."

See also J. H. Trisdale, Inc. v. Shasta County Title Co., (1956) 146 Cal.App.2d 831, 304 P.2d 832, 835, which, in reliance upon and quotation from Maggio, accepts the rule of decision that "knowledge of defects in the title by the insured in no way lessens the liability of the insurer".

Feldman v. Urban Commercial, Inc., 78 N.J.Super. 520, 189 A.2d 467 (1963), makes clear the reason why a clause such as paragraph 10 of the title insurance policy involved in this case does not afford a defense so far as matters that were of record at the time of the policy's issuance are concerned. Feldman points out that a title insurance company "holds itself out as expert in title insurance" and that it is "incumbent upon [a title insurance company], as an expert, to evaluate the risk which it contemplate[s] insuring by marshalling all the knowledge that it ha[s] acquired, either actual or constructive" (l. c. 472 of 189 A.2d).

Section 442.390, V.A.M.S., provides that the recording of any instrument shall "impart notice to all persons of the contents thereof and all subsequent purchasers and mortgagees shall be deemed, in law and equity, to purchase with notice". Citation of authority is unnecessary to establish that the doctrine of constructive notice in Missouri as codified in Section 442.390 is well established and broadly applied. Feldman emphasizes that a title insurance company, as all other persons, has "constructive notice of all the factors, which it, in its expertise, was bound to evaluate relative to the risk undertaken" (l. c. 473 of 189 A.2d).

■ Of course, the rule of decision applicable to factual situations where the defect was not within the constructive knowledge of a title insurance company because the defect was not a matter of record are neither applicable nor persuasive in cases involving factual situations comparable to that stipulated in this case. Cases such as Vaughn v. United States Title Guaranty & Indemnity Co., 137 App.Div. 623, 122 N.Y.S. 393 (1910); Clarke v. Massachusetts Title Ins. Co., 237 Mass. 155, 129 N.E. 376 (1921); Rosenblatt v. Louisville Title Co. (1927) 218 Ky. 714, 292 S.W. 333; Lesamiz v. Lawyers Title Insurance Corporation, (1958) 51 Wash.2d 835, 322 P. 2d 351; and Feldman v. Urban Commercial, Inc., supra, all involve factual situations of actual fraud relating to matters not of record and are examples of the type of cases that must be distinguished on the facts from the stipulated facts in this case.

A word should be added concerning defendant's theory of either reformation or mistake.

■■ Under the facts as presently stipulated, we believe that what was said in New York Title Ins. Co., at page 718 of 12 N.Y.S.2d, must be said in this case. On the facts there presented that court held that "[t]he defendant is not entitled to rescission on the theory of a material misrepresentation". That case further

held, as the presently stipulated facts would require us to hold, that there was no factual basis for a reformation because "[t]here is nothing to indicate that by mutual mistake of both parties, or by a mistake of the defendant and fraud of the plaintiff, etc., the policy was drawn to cover a risk which the defendant did not intend to insure. So far as appears, the policy was drawn in the form that both parties intended it to be. There is nothing about it to be reformed." Whether we will add, as did that court, that the "counterclaim is dismissed upon the merits" is dependent upon whether defendant produces at trial any evidence in addition to that presently stipulated.

■ We have not overlooked Parker v. Title & Trust Co., (9th Cir., 1956) 233 F.2d 505, cited and relied upon by defendant. That case, on the facts, involved a trap and a conspiracy of truly horrendous proportions. The defendant insurance company was relieved of liability under Oregon law because the trial court had made "no finding of gross or culpable negligence" on the part of the title insurance company. The statements in the opinion of that court must be read in the context of the factual situation there involved. That case also establishes the proposition, at least for Oregon (and we think it is good law), that equity may not grant relief for unilateral mistake if the facts show that he who made such a mistake was grossly or culpably negligent in making it. It is indeed difficult to understand how a title insurance company can miss five deeds of trust that were of record at the time it issued its title insurance policy without being grossly and culpably negligent. Such is the case presented by the present stipulation of the parties.

There may be facts as yet undeveloped that might present a factual situation different from that presently stipulated; but unless such facts are established by the defendant, we are of the opinion that defendant's equitable defenses on the merits are not tenable. Again we point out, that what we say in this regard is not to be construed as any statement concerning possible equitable considerations that may be applicable as they may relate to either the measure or amount of damages.

We believe that what we have said will be helpful to the parties to the extent we have indicated. In order that it be certain that this case be disposed of at the April term in our Southern Division, counsel for both parties are ordered to complete all further discovery, including the taking of any depositions prior to February 20, 1964. The Court will assume that the excellent cooperation that counsel have thus far displayed so far as the voluntary exchange of documentary evidence will continue and that any depositions that either party wishes to take may be arranged by agreement.

It is so ordered.