**SOUTH SHORE BANK**

v.

**STEWART TITLE GUARANTY COMPANY.**

Civ. A. No. 87–2173–Z.

United States District Court,
D. Massachusetts.

June 16, 1988.

Gary R. Greenberg, Lawrence R. Kulig, Goldstein & Manello, Boston, Mass., for plaintiff.

John W. McConnell, Wayne H. Scott, Cuddy, Lynch, Manzi & Cunningham, Boston, Mass., for defendant.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

Plaintiff, South Shore Bank ("South Shore"), seeks a declaration that defendant, Stewart Title Guaranty Company ("Stewart"), is liable for the expense of removal, clean-up, and monitoring of hazardous waste on property insured under a title insurance policy issued by Stewart in favor of South Shore. Plaintiff also seeks damages for breach of contract together with costs and attorneys' fees. Defendant has moved for summary judgment and for sanctions under Rule 11, Federal Rules of Civil Procedure.[1]

The following facts are not in dispute. On July 12, 1985, South Shore loaned J & B Realty Partnership ("J & B") $2,800,000, the security for which was a mortgage on certain property located in Bridgeport, Connecticut ("the Property"). On July 22, 1985, Stewart issued a policy of title insurance on the Property to South Shore, the mortgagee. An endorsement to the policy provides in pertinent part: "The Company insures against loss or damage sustained by the insured by reason of a lien which attaches to the insured premises pursuant to section 22a–452a of the Connecticut General Statutes as a result of conditions existing on or at the insured premises as of the date of the policy if such lien claims priori-ty over the lien of the insured mortgage." Under the cited statute, the commissioner of environmental protection ("the commissioner") may file a lien on property if he cleaned it of hazardous waste with state funds to secure reimbursement thereof.

During 1986, J & B defaulted on its loan payments. Thereafter, an environmental assessment of the site determined the presence of hazardous waste on the Property. When South Shore was advised thereof, it notified Stewart that it expected to claim against the policy following foreclosure. On July 24, 1987, a foreclosure sale was held and South Shore was successful in its bid for the Property.

Defendant's motion for summary judgment is premised on the ground, inter alia, that the endorsement is inapplicable because no lien has been filed pursuant to § 22a–452a and insurance coverage is not triggered by the possibility that such a lien may be filed in the future.

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). *See also, Bratt v. International Business Machines Corp.,* 785 F.2d 352, 359 (1st Cir.1986). To oppose such a motion successfully, a plaintiff "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

Plaintiff argues that a genuine issue of material fact exists as to whether foreclosure by it extinguishes insurance coverage. However, even if plaintiff is correct that the policy and the endorsement remain in force after foreclosure on the Property, plaintiff has failed to allege the existence of a commissioner's lien to warrant application of Conn.Gen.Stat. § 22a–452a to this case.[2]

---

1. Defendant has also filed a motion to transfer this matter to the District of Connecticut conditional upon the outcome of the summary judgment motion. In addition, plaintiff has moved to strike various defenses raised by defendant.

Both these motions are rendered moot by this decision.

2. Because § 22a–452a is inapplicable here, it is unnecessary to determine whether plaintiff's

As noted, the endorsement provides coverage for loss or damages "sustained by the insured by reason of a lien which attaches to the insured premises pursuant to section 22a–452a[3] of the Connecticut General Statutes...." Under Connecticut law, a lien is "[a] hold or claim which one person has upon the property of another as a security for some debt or charge." *Interstate Fur Mfg. Co. v. Redevelopment Agency*, 154 Conn. 600, 604, 227 A.2d 425, 426 (1967). The lien described in § 22a–452a arises when state funds have been expended to contain, remove or mitigate the effects of hazardous waste. The statute delineates the procedural requirements necessary to effectuate this type of lien. First, a certificate of lien must be filed in the town where the real estate is located; and second, the commissioner must mail a copy of the certificate to all persons holding an interest in the real estate as notification of the priority of the commissioner's lien.

First, plaintiff has failed to allege the existence of a commissioner's lien. In fact, plaintiff does not controvert the affidavit of Robert Anderson, Stewart's New England manager, to the effect that no lien on the Property has been filed in the land records of Bridgeport, Connecticut, pursuant to § 22a–452a, indeed, that no lien has arisen as no amounts have been paid by the commissioner in this regard. Hence, § 22a–452a is inapposite here.

Second, as a matter of law, the possibility that the commissioner may file a lien does not trigger insurance coverage under the endorsement. In *Chicago Title Insurance Co. v. Kumar*, 24 Mass.App.Ct. 53, 506 N.E.2d 154 (1987), a landowner alleged that release of hazardous material was a defect in title within the meaning of his title insurance policy and that the Commonwealth's power to impose a future lien under Mass.Gen.L. ch. 21E, § 13 (1986) rendered his title unmarketable. The Massachusetts Appeals Court, however, found that the possibility of a future lien did not give the landowner a cause of action.

The mere possibility that the Commonwealth may attach a future lien under G.L. c. 21E, § 13, as a result of the release of hazardous material (existing but unknown at the time a title insurance policy is issued) when the Commonwealth has neither expended moneys on the property requiring reimbursement nor recorded the necessary statement of claim, is insufficient to create a "defect in or lien or encumbrance on ... title." *Kumar*, 24 Mass.App.Ct. at 56, 506 N.E.2d at 156.

Plaintiff maintains that the policy behind the Connecticut statute is to provide an immediate response to the existence of hazardous waste materials which will be frustrated if the property owner waits for a lien to be filed by the commissioner. Inclusion in the policy of § 22a–452a has a different purpose, however. The reference to the statute in the endorsement is not to ensure an immediate response to environmental pollution but rather to protect the

---

losses are excluded also under other terms of the policy.

3. Conn.Gen.Stat.Ann. § 22a–452a (West 1987), which was in effect at the relevant time provided in pertinent part as follows:

(a) On and after June 3, 1985, any amount paid by the commissioner of environmental protection pursuant to subsection (b) of section 22a–451 to contain and remove or mitigate the effects of a spill shall be a lien against the real estate of the person causing the spill in accordance with the provisions of this section.

(b) A lien pursuant to this section shall not be effective unless (1) a certificate of lien is filed in the land records of each town in which the real estate is located, describing the real estate, the amount of the lien, the name of the owner as grantor and the name of the person causing the spill, if known, and (2) the commissioner mails a copy of the certificate to such persons and to all other persons of record holding an interest in such real estate over which the commissioner's lien is entitled to priority.

(c) Such lien shall take precedence over all transfers and encumbrances recorded on or after June 3, 1985, in any manner affecting such interest in such real estate or any part of it on which the spill occurred or from which the spill emanated, or real estate which has been included, within the preceding three years, in the property description of such real estate and is contiguous to such real estate....

insured from a challenge to its title by reason of a commissioner's lien that has priority over South Shore's legal rights in the Property. *See Kumar*, 24 Mass. App.Ct. at 57, 506 N.E.2d at 157 (title marketability relates to defects affecting legally recognized rights and incidents of ownership). Plaintiff has neither alleged nor offered any facts to show a defect in title. Hence, it has no cause of action against Stewart.

Plaintiff finally contends that defendant's motion for summary judgment should be denied without prejudice to renewal after it has conducted further discovery on the intentions of the respective parties in drawing up the policy. But plaintiff has indicated no ambiguity in the insurance contract which would warrant opening the door to admit extrinsic evidence of the state of mind of the parties. *See McKeown Distribs. v. Gyp–Crete Corp.*, 618 F.Supp. 632, 641 (D.Conn.1985). Moreover, paragraph 11 of the conditions and stipulations of the policy confines interpretation of the policy to the written insurance contract and endorsement exclusively.

*Rule 11 Sanctions*

■ A pleading, motion or paper violates Rule 11 if it is frivolous, legally unreasonable, or factually without foundation, even though not signed in subjective bad faith. *See Burkhart v. Kinsley Bank*, 804 F.2d 588, 589 (10th Cir.1986); *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir.1986) (adopting the standard set forth in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421–22, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1977)); *Eastway Construction Co. v. City of New York*, 762 F.2d 243, 253 (2d Cir.1985), *cert. denied*, —— U.S. ——, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

Rule 11, however, is not intended to "chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483 (3d Cir.1987) (citing advisory committee notes); *Zaldivar*, 780 F.2d at 834. Furthermore, a pleader need not view the law in the correct light, but need only present a "good faith" argument to substantiate his or her view of what the law is or should be.

*See Vatican Shrimp Co., Inc. v. Solis*, 820 F.2d 674, 681 (5th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 345, 98 L.Ed.2d 371 (1987); *Wasyl, Inc. v. First Boston Corp.*, 813 F.2d 1579, 1583 (9th Cir.1987). Although this is a close case, since plaintiff has made a good faith, albeit incorrect, argument as to the meaning of the endorsement, Rule 11 sanctions are not appropriate.

Defendant's motion for summary judgment motion is granted; its motion for sanctions pursuant to Fed.R.Civ.P. 11 is denied. Judgment may be entered for defendant.