Garsh, J.
The plaintiff, Thomas E. Cargill, III, as Trustee of the Water Street Realty Trust (“Cargill”), brought this action against the defendant, Peter H. Gilmore, as Trustee of the T.J. Lotito Realty Trust (“Gilmore”) for damages arising out of the purchase of property in March of 1986.
Gilmore has now moved for summary judgment on all counts of the complaint.
BACKGROUND
In considering the defendant’s summary judgment motion, the following facts are undisputed. The property in question is located at 11-25 Water Street, Beverly, Massachusetts (the “Property”). Thomas J. Lotito (“Lotito”), now deceased, was the owner of the Property in the early 1970s when it was conveyed to Claudette Jeanotte, who, in turn, conveyed it to a realty trust known as the ‘T.J. Lotito Realty Trust.” Lotito was the sole trustee of the T.J. Lotito Realty Trust, which owned the Property until 1986.
On February 11, 1986, the T.J. Lotito Realty Trust and Thomas E. Cargill, III entered into a Purchase and Sale Agreement (the “Agreement”) whereby Lotito agreed to sell, and Cargill agreed to buy, the Property. That provision provided, as follows:
Buyer may have the premises inspected within thirty (30) days after the execution of this Agreement to determine whether or not hazardous wastes, oil, or other contaminated material is or may be present on the premises. If such inspection gives Buyer reasonable grounds to believe that hazardous wastes, oil, or other contaminated material is or may be present on the premises Buyer may terminate this agreement by notice to Seller within such thirty (30) day period, in which event the deposit shall be refunded to Buyer and neither party shall have any further obligations hereunder. If Buyer does not so terminate this agreement, Buyer shall be deemed to have waived all objection to the condition of the premises, including hazardous waste, oil, or other contaminated material, existing on the date of completion of Buyer’s inspection.
Thomas E. Cargill, III did not exercise his right, under the Agreement, to inspect the Property. On March 27, 1986, Thomas E. Cargill, III assigned his interest in the Agreement to himself as trustee for the Water Street Realty Trust. On that same date, the T.J. Lotito Realty Trust conveyed the Property to Cargill.
In August of 1986, the Beverly Fire Department directed Cargill to remove two underground fuel tanks on the Property. During this removal process, Cargill discovered that these tanks had leaked gasoline onto the site. Subsequently, in May of 1987, Cargill hired the environmental engineering firm of C.E. Maguire, Inc. (“Maguire”) to perform various studies, including a “Chapter 21E/Hazardous Materials Study” of the Property. In July of 1987, Maguire provided Cargill with an environmental site assessment (the “Assessment”). The Assessment reported that “the data collected indicated] that the site [was] contaminated with hazardous substances.” It further stated that “it would appear that gasoline ha[d] been released into the material previously contaminated resulting in an area of contamination within the site where cleanup and/ or removal action may be required.” (Emphasis supplied.) The Assessment concluded that “it would appear [to be] necessary to notify the DEQE that a release or threat of hazardous material is present on this site in accordance with the provisions of Ch. 21 . . .” Cargill asserts that he understood the studies done by Maguire to have “demonstrated that the Property was substantially contaminated with petroleum products to an extent far beyond what Mr. Lotito had led [his father and him] to believe prior to the sale, and that the petroleum contaminants had leaked not only from the two fuel tanks that [he] removed in 1986, but also from two other fuel tanks on the Property, which ... [like the two tanks removed in 1986] had never been used by the Water Street Realty Trust, but apparently had been used by the prior owner, the T.J. Lotito Realty Trust.”
In 1988-1989, Cargill retained engineers from Haley and Aldridge to supervise the clean-up process and the removal of contaminated soil. The last bills were received by Cargill in July 1989.
In or about February of 1987, Lotito moved out of state. Cargill knew that Lotito’s mailing address was P.O. Box 1487, Dover, New Hampshire. Lotito died in 1991.
On January 22, 1992, Cargill filed the complaint alleging nine causes of action arising from the presence of gasoline and oil contamination on the Property.
DISCUSSION
Summary judgment shall be granted where there are no material facts in dispute and the moving party *169 is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). With respect to any claim on which the party moving for summary judgment does not have the burden of proof at trial, it may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1981); accord Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat a motion for summary judgment.” Pederson v. Time, Inc., supra at 17.
Waiver
Gilmore contends that the hazardous waste inspection provision in the Agreement bars all the claims brought by Cargill. “The interpretation of a contract presents a question of law for the court, except to the extent disputed facts bear upon such interpretation.” USM Corp. v. Arthur D. Little Systems, Inc., 28 Mass.App.Ct. 108, 116 (1989), rev. denied, 406 Mass. 1104 (1990). “The object of the court is to construe the contract as a whole, in a reasonable and practical way, consistent with its language, background and purpose.” Id. Unambiguous language in the contract must be enforced according to its terms. Cody v. Connecticut General Life Ins. Co., 387 Mass. 142, 146-47 (1982). An ambiguity in a contract is created when two rational interpretations of the contractual language exist. Hazen Paper Co. v. United States Fidelity & Guaranty Co., 407 Mass. 689, 700 (1990). “However, an ambiguity is not created simply because a controversy exists between parties, each favoring an interpretation contrary to the other’s.” Jefferson Ins. Co. of New York v. Holyoke, 23 Mass.App.Ct. 472, 475, rev. denied, 399 Mass. 1104 (1987). See also Continental Casualty Co. v. Canadian Universal Ins. Co., 924 F.2d 370, 374 (1st Cir. 1991).
The language in the hazardous waste inspection provision does not unambiguously bar plaintiff s claims. The Agreement does not require the buyer to have the premises inspected. The buyer “may” do so. Claims are waived if the buyer avails himself of the right to inspect and if such inspection provides reasonable grounds to believe that hazardous material may be on the Property. The waiver does not expressly purport to bar all claims arising out of the presence of contamination, whether or not an inspection was performed.
Even if the plaintiffs construction of the Agreement were correct, Gilmore still would not be entitled to summary judgment on all claims. The plaintiff is entitled to an opportunity to prove that the waiver was procured by fraud and, thus, is not enforceable. Bates v. Southgate, 308 Mass. 170, 183 (1941).
Accordingly, Gilmore’s motion for summary judgment on all counts of the complaint is denied.
Statutes of Limitations
Gilmore contends that, to the extent the claim for relief pursuant to M.G.L.c. 2 IE (Count I) seeks payments for moneys paid out prior to January 22, 1989 to assess or clean up the Property, it is barred by the statute of limitations. Under c. 2 IE, a plaintiff seeks reimbursement, not compensation for damage to the land. The statute of limitations does not begin to run until the property owner’s lability is “finally fixed." Hays v. Mobil Oil Corp., 736 F.Supp. 387, 396-97 (D.Mass. 1990), aff d in part and remanded in part on other grounds, 930 F.2d 96 (1st Cir. 1991). See also Oliveira v. Pereira, 414 Mass. 66, 74 (1992) (citingwith approval Hays v. Mobil Oil Corp., supra).
On this record, it cannot be said that Cargill’s liability was finally fixed more than three years before suit was commenced. As the Supreme Judicial Court noted, “[i]t may take several years of sophisticated environmental studies before the plaintiff can determine whether he has a claim or has a claim serious enough to warrant suit.” Id. at 74 n.12. Thus, Gilmore’s motion for summary judgment on Count I of the Complaint is denied.
Gilmore also argues that the causes of action for negligent misrepresentation (Count II), fraud (Count III), and violations of G.L.c. 93A (Count TV) are time barred. The claims for negligent misrepresentation and fraud are governed by the three-year statute of limitations for tort claims. G.L.c. 260, §2A. The limitation period for the c. 93A claim is four years. G.L.c. 260, §5A
Assuming arguendo that the contamination initially was “inherently unknowable,” then the fraud, negligent misrepresentation and related c.93A claims would have accrued on the date the plaintiff discovered orreasonably should have discovered the misrepresentation. Friedman v. Jablonski, 371 Mass. 482, 485-86 (1976); Mansfield v. GAF Corp., 5 Mass.App.Ct. 551, 555 (1977).
Gilmore contends that each of the following points in time triggered the running of the applicable statutes of limitations:
1) The thirty-day inspection period in February and March of 1986, during which Cargill allegedly was advised that the Property was contaminated; or
2) August of 1986, when two underground fuel tanks were removed; or
3) July of 1987, when Maguire reported to Cargill that the Property was contaminated.
What Lotito told Thomas E. Cargill, III before he executed the Agreement is disputed. These disputed questions of fact preclude deciding, at this stage, *170 whether Cargill should have discovered the alleged misrepresentations prior to the closing. The undisputed facts do, however, demonstrate that the tort and c. 93A actions accrued no later than July of 1987.
In Friedman v. Jablonski, supra at 486, the Court held that a misrepresentation concerning the existence of a right-of-way had ceased to be inherently unknowable when the plaintiffs had an opportunity to check public records and, if no right-of-way had been recorded, to inquire further concerning the basis for the representation. Similarly, in Graveline v. BayBank Valley Trust Co., 19 Mass.App.Ct. 253, rev. denied, 394 Mass. 1103 (1985), the Court held that the age of a roof was not inherently unknowable once plaintiffs had both an opportunity and cause to investigate.
In the case at bar, the opportunity and cause for further inquiry arose when the Beverly Fire Department mandated the removal of two underground fuel tanks in August of 1986. During this removal process, Cargill discovered that these tanks had leaked gasoline onto the site. Then, in May of 1987, Maguire was retained to perform examinations, including a “Chapter 21E/Hazardous Materials Study” of the Property. In July of 1987, Maguire reported to Cargill that the Property was contaminated and that clean-up and/or removal action may be required. By that point, there were enough suspicious circumstances to have started the limitations clock running.
Cargill responds that there are disputed questions of fact with respect to “when the plaintiff discovered the full extent of contamination on the property, when the plaintiff actually discovered that the defendant had intentionally ‘lied’ to it about the property, and when the actual damages in question occurred.” These disputes are not material. In few cases is there, as here, an alleged admission by a potential defendant that he has intentionally “lied.” If a plaintiff were entitled to wait for an outright admission of fraud, the statute of limitations for deceit would be rendered a nullity. Neither may a plaintiff delay until he has ascertained the “full extent” of the misrepresentation. Olsen v. Bell Telephone Labs, Inc., 388 Mass. 171, 175 (1983) (“If knowledge of the extent of injury were to control the accrual of a cause of action, the fixed time period of statutes of limitations effectively would be destroyed”); Mansfield v. GAF Corp., supra at 555 (action accrued when plaintiff became aware of defects in new roof, not when, later, plaintiff first learned of the extent of the damage).
“In all cases the statute of limitations begins to run when the injured person has notice of the claim. The ‘notice’ required is not notice of every fact which must eventually be proved in support of the claim . . . Rather, ‘notice’ is simply knowledge than an injury has occurred.” White v. Peabody Construction Co., Inc., 386 Mass. 121, 130 (1982). The “discovery rule starts a limitation period running ‘when a reasonably prudent person . . . reacting to any suspicious circumstances of which he might have been aware . . . should have discovered that he had been harmed by [the defendant].’ ” Hanson Housing Authority v. Dryvit System, Inc., 29 Mass.App.Ct. 440, 446 (1990), rev. denied, 409 Mass. 1101 (1991) (emphasis in original).
In Hanson, bubbling in the finish coat, two large cracks, and the falling out of caulking were held to be sufficiently suspicious to stimulate further inquiry as to the condition of newly constructed walls. As in Hanson, the plaintiff here was alerted to facts which pointed to the possible existence of a legal claim against the defendant. Once Maguire submitted its report, Cargill was no longer in a state of “blameless ignorance.” Id at 447. See also Hendrickson v. Sears, 365 Mass. 83, 89 (1974) (“[a] cause of action accrues on the happening of an event likely to put the plaintiff on notice”).
The fact that Lotito resided out of state from February of 1987 until his death in 1991 does not prevent the causes of action for negligent misrepresentation, fraud, and violation of c. 93A from being time barred. Chapter 260, §9 tolls the period of limitations when a person is beyond both the jurisdiction and the process of this court. Walsh v. Ogorzalek, 372 Mass. 271 (1977).
Cargill knew Lotito’s out-of-state mailing address. Rule 4(e)(3) of the Massachusetts Rules of Civil Procedure and c. 223A, §6(a) permit service outside the Commonwealth by delivery of a copy of the summons and complaint by any form of mail addressed to the person to be served and requiring a signed receipt. Certified mail, return receipt requested, is an appropriate method of service. Wood v. Wood, 369 Mass. 665, 672 (1976).
Cargill’s conclusory, unsupported assertion in its memorandum that “there is no form of mail ‘requiring a signed receipt’ that can be delivered to a P.O. Box” (emphasis supplied), is refuted by the affidavit of William O’Keefe, an employee of the United States Postal Service. Mr. O’Keefe states that postal regulations permit the delivery of certified mail requiring a return receipt to a post office box.
Cargill offered no evidence that mail could not have been sent to Lotito’s post office box in a form requiring a signed receipt during the years Lotito resided outside the Commonwealth. The burden is on the plaintiff to establish that the residence of the defendant outside the Commonwealth was of such a character that the time of such residence is to be deducted in computing the period of the limitation. Ford v. Rogovin, 289 Mass. 549 (1935). Moreover, it is apparent that the post office’s practice of delivering certified mail, return receipt requested, to a post office box is not a recent development. See, e.g., Virginia Lime Company v. Craigsville Distributing Co., 670 F.2d 1366 (4th Cir. 1982) (defendant properly served pursuant to state longarm statute by forwarding of complaint by certified mail, return receipt requested, to a post office box, and default proper when defendant refused to sign for the letter).
Accordingly, Gilmore is entitled to summary judgment in its favor on the fraud, negligent misrepresentation and c. 93A claims.
*171 Contribution and Indemnification
Gilmore argues Cargill may not maintain its cause of action for contribution and indemnification (Count V). G.L.c. 231B, §l(a) provides for a right of contribution if two or more persons are “jointly liable in tort for the same injury to person or property.” The litmus test is shared fault. Elias v. Unisys Corp., 410 Mass. 479, 482 (1991).
Although Cargill rests the entire fault for the hazardous waste contamination on the defendant, nevertheless, there are disputed questions of fact concerning the contamination. Stephen Lotito claims to have witnessed persons draining bilge water containing anti-freeze directly onto the Property when it was owned by Cargill. Moreover, for the reasons that Cargill’s c. 2 IE claim is not time barred, neither is its claim for contribution.
A right of indemnification may arise because under c. 2 IE, an owner, through no fault of his own, is strictly liable if there has been a release of oil or hazardous material on property, even if the release occurred prior to purchase of the property. Griffith v. New England Telephone & Telegraph Co., 414 Mass. 824 (1993). Here, there is evidence that Cargill was strictly liable to pay for the removal of contaminated oil.
In sum, disputed questions of fact preclude entry of summary judgment in favor of Gilmore on the contribution and indemnification claims.
Breach of Warranty of Title
Gilmore argues that the claim for breach of warranty of title (Count VI) must be dismissed because Cargill is not in debt to the Commonwealth and, accordingly, no lien may be placed on the Property. Pursuant to G.L.c. 21E, §13, any liability to the Commonwealth under that act constitutes a debt to the Commonwealth, and such a debt constitutes a lien on property owned by a person so liable when the Commonwealth files or records a statement of claim.
“[A] debt to the Commonwealth under §13, is created where the Commonwealth engages in ‘investigations, monitoring . . . and other information gathering activities .. . [including], without limitation, studies, services and investigations to plan, manage, and direct assessment . . . actions ...’ ” Acme Laundry Co. v. Secretary of Environmental Affairs, 410 Mass. 760, 766 (1991). The complaint does not allege that the Commonwealth has incurred costs for monitoring and supervision. Rather, plaintiff alleges that the mere presence of oil or hazardous substances on the Property gives rise to an “inchoate lien” in favor of the Commonwealth. In its opposition to Gilmore’s motion for summary judgment, Cargill proffered no evidence that the Commonwealth, in fact, ever incurred any assessment costs.
In any event, the mere possibility that, as of the date of the conveyance, the Commonwealth, in the future, might incur assessment costs and might attach a lien under G.L.c: 21E, §13, as a result of the presence of contamination on the Property, is insufficient to create “a defect in or lien or encumbrance on . . . title.” Chicago Title Insurance Co. v. Kumar, 24 Mass.App.Ct. 53A, 56 (1987). See also South Shore Bank v. Stewart Title Guaranty Co., 688 F.Supp. 803, 805 (D.Mass.), aff'd, 867 F.2d 607 (1st Cir. 1988) (title insurance policy not triggered when state funds not expended to clean up site).
Cargill argues that because of the contamination, he did not receive a good and clear record and marketable title, free from encumbrances. The date of determination of marketability is the date upon which the seller was obligated to convey the Property. Kares v. Covell, 180 Mass. 206 (1902). The plaintiffs argument fails to distinguish between economic marketability and title marketability. Economic lack of marketability relates to physical conditions affecting the use of the Property, while title marketability relates to defects affecting legally recognized rights and incidents of ownership. Chicago Title Insurance Co. v. Kumar, supra at 57. “The presence of hazardous material may affect the market value of the [plaintiffs] land, but, on the present record, it does not affect the title to the land.” Id.
Gilmore is accordingly entitled to summary judgment on the warranty of title claim.
Unjust Enrichment
A claim for unjust enrichment (Count VII) is not appropriate where, as here, the plaintiff has an adequate remedy of law under G.L.c. 21E. Commonwealth v. Pace, 616 F.Supp. 815, 822 (D.Mass. 1985). Cf. In re Hemingway Transport, Inc., 73 B.R. 494, 507 (Bkrtcy D.Mass. 1987). Thus, Gilmore’s motion for summary judgement as to the claim for unjust enrichment is allowed.
Declaratory Judgment
Finally, Gilmore argues for dismissal of the request for a declaratory judgment (Count VIII) on the grounds that the rest of the complaint must be dismissed. Because the court has found that Gilmore is not entitled to judgment on each count of the complaint, the declaratory judgment count may stand.
ORDER
For the foregoing reasons, it is hereby ORDERED that the Defendant’s Motion for Summary Judgment be:
1. ALLOWED as to Counts II, III, IV, VI and VII of the complaint; and
2. DENIED as to Counts I, V and VIII of the complaint.