KATHERINE SPERLING, Respondent, *v.* TITLE GUARANTEE AND TRUST COMPANY, Appellant.*

Second Department, October 7, 1929.

*Charles H. Street* [*Rawdon W. Kellogg* with him on the brief], for the appellant.

*Hugo Hirsh* [*Irving Moldauer* with him on the brief], for the respondent.

CARSWELL, J. The plaintiff claimed she suffered damages because of the defendant's failure to report to her a proposed change of grade in certain streets adjoining a certain plot purchased by her and upon which parcel the defendant issued to her its policy of title insurance. The complaint set out two causes of action: (1) For negligence without reference to the title policy; (2) for a breach of the title policy. The trial court denied a motion to require plaintiff to elect as to which cause of action she relied upon. It held as a matter of law that defendant's failure to report the proposed change of grade to the plaintiff rendered the title unmarketable and breached the title policy, and it further held that the only question to be submitted to the jury was one of damages.

The defendant moved to dismiss the complaint and the motion was denied. From the judgment entered in favor of the plaintiff the defendant appeals. It asserts many points of grievance but it will be necessary to consider only two of them. It claims that its motions, (1) to dismiss the cause of action on the title policy, and (2) to dismiss the cause of action based upon alleged negligence, should both have been granted.

It appears that on March 12, 1925, the plaintiff made a contract with one McDonald to buy the northeast corner of Leavitt street and Thirty-fourth avenue in Queens borough. There was a dwelling house thereon or in the course of construction at the time. The city of New York had not, at that time, made any physical change

in the grade of Leavitt street or Thirty-fourth avenue. The defendant had nothing to do with preparing the contract of sale, but after it was signed McDonald at plaintiff's request brought it to the defendant and applied for title insurance in connection with a title search. No formal application therefor was executed. The defendant examined the title and wrote McDonald a letter which specified what the search had disclosed. There was no mention therein of any change of grade of adjacent streets. On April 14, 1925, the title was closed in McDonald's office and the defendant issued its policy of title insurance to the plaintiff. Plaintiff entered into possession at once, and about a year thereafter, in April, 1926, the city started grading the streets adjacent to the plaintiff's premises and finished the work in February, 1927. The result of this work was that the grade was changed so that it was seven feet above the former natural grade. As a consequence plaintiff's house was that much below the new grade. Plaintiff's property was formerly at the lowest level in the street and had an unobstructed view of Myrtle avenue, some distance away, where the grade had already been changed at the time plaintiff bought the property. Plaintiff had to have her house raised and the land filled in to conform to the new grade, and for the damages thus suffered she has sued the defendant, claiming that the failure to advise her of the proposed change of grade constituted a breach of the policy of title insurance issued by it and also constituted negligence with respect to the title search which she had employed the defendant to make of the property at the time she had it under contract.

When the defendant made the search and issued the policy in April, 1925, there was in existence, on file in the topographical bureau of Queens borough, a map which had been adopted December 6, 1918, by the board of estimate and apportionment. This map set out a street system for a large area which included the streets adjacent to the plaintiff's property and included Myrtle avenue, some distance therefrom. This map indicated that changes of grade were proposed, among them a change of grade which had been accomplished, as far as Myrtle avenue was concerned, on the day that plaintiff purchased. The proposed change of grade with reference to Leavitt street and Thirty-fourth avenue, at the intersection of which plaintiff's parcel is located, is shown on this map to be seven feet above the then natural grade. Annexed to this map was a notation: " Notice: Parts of this map may have been changed by more recent adoptions; be sure to check the latest adopted maps."

The defendant asserts that its failure to except in its title policy the proposed map with reference to the proposed grade changes

did not result in the policy being breached by reason of the existence of this map of proposed grade changes and by reason of its failure to report the notations on this map to the plaintiff, for the reason (1) that the adoption of the map did not create a defect in title, or (2) make the title unmarketable, or (3) create any lien or incumbrance.

Defendant's policy describes the plaintiff's parcel by courses which limit it to the sides of the avenues and streets specified. The title insurance is confined to the parcel bounded by these sides, except that by a later clause the ordinary rights of light, air and access in the abutting streets are covered.

A summary of what the policy insures the plaintiff against should be stated.

The policy insures the plaintiff against all loss or damage which she " shall sustain by reason of any

" Defect or *defects of title* affecting the premises described in Schedule A, hereto annexed, or affecting the interest of the insured therein, as described in said schedule.

" Or by reason of *unmarketability of the title of the insured to or in said premises.*

" Or by reason of liens or incumbrances charging the same at the date of this policy; saving all loss and damage by reason of the estates, interests, defects, objections, liens and incumbrances excepted in Schedule B, or by the conditions of this policy, hereto annexed and hereby incorporated into this contract, the loss and the amount to be ascertained in the manner provided in said conditions and to be payable upon compliance by the insured with the stipulations of said conditions, and not otherwise."

The pertinent conditions of the policy are:

1. The company will, at its own expense, defend the insured in all actions or proceedings founded *on a claim of title or incumbrance* prior to the date of this policy *and thereby insured against.*

2. No claim for damages shall arise except under section 1 and except also in the following cases:

(I) Where there has been a final determination in a court of competent jurisdiction under which the insured may have been dispossessed or evicted from the premises *covered* by this policy.

" 10. No title or rights of the assured in any premises beyond the lines of the premises as described in Schedule A or in any streets, roads, avenues, lanes or ways on which the said premises abut, *except the ordinary rights of light, air and access* belonging to abutting owners are insured by this policy unless such rights are specifically expressed as being insured, nor does this policy insure

that the buildings &ast; &ast; &ast; upon the premises comply with State and Municipal laws, regulations and ordinances."

13. *Defects and incumbrances arising after the date of the policy are not to be deemed covered.*

The foregoing provisions concern themselves with defects to the *title* to the property or an incumbrance or lien upon the property, any one of which would cause the title to be unmarketable. These provisions do not concern any situation affecting the value of the property as distinguished from affecting the title to the property. They do not concern themselves with physical conditions respecting the property or with physical conditions of the abutting property. Accordingly, a change of grade which concerned the physical condition of the land abutting the plaintiff's parcel was a matter the failure to report which did not constitute a breach of the policy of title insurance. If there had existed an obnoxious business or nuisance adjoining the property, the defendant would have been under no duty to report the existence of such a physical condition under pain of being held to have breached its title policy because of such failure. Such a condition would affect the value, and the knowledge of it would be of interest to a proposed buyer, but it would not affect the title to the parcel insured, or create a defect in it, or make the title unmarketable, or constitute a lien or incumbrance upon it. The map of proposed grade changes was merely a proposed change of grade and not in fact final, as the notation thereon indicated, and the change might never have taken place. The physical conditions, present and prospective, in the absence of a special engagement with reference to them between the title company and the plaintiff, were matters with which the plaintiff must concern herself by physical examination of the premises and inquiries in proper places with respect to what might or might not happen to the land adjoining the premises. When plaintiff bought she could see that the land upon which the house involved herein was standing was at a level much lower than Myrtle avenue, a short distance away, which had apparently been brought up to a new grade considerably above the line of the natural grade of the land against which plaintiff's house abutted. She, therefore, was put on notice that a change of grade was a possibility. The proposed change of grade evidenced by the map in the topographical bureau being specifically subject to change, it cannot be said that its existence constituted an incumbrance or lien in view of the power of the board of estimate and apportionment (Greater New York Charter [Laws of 1901, chap. 466], § 442, as amd. by Laws of 1917, chap. 632) to change the grade of existing streets shown upon such a map or plan " whenever and as often as it may deem it for the

public interest so to do." Accordingly, the motion to dismiss the cause of action under the policy of title insurance should have been granted.

As to the second cause of action for negligence, but one aspect of this need be considered. When McDonald, the seller of the property, took the contract of sale with the plaintiff's signature thereon to the defendant for the purpose of having a search made and a title policy issued, he, McDonald, did not sign any formal application on behalf of the plaintiff. He, therefore, on behalf of the plaintiff, merely ordered the defendant to make the usual search of the title and issue its usual policy. There is no proof in this record that it is the custom among conveyancers and title companies to report proposed changes in the grade of streets when a search of title is asked to be made with respect to a particular parcel. In order that the plaintiff might successfully assert a claim of negligence in this regard, it was necessary that she prove such a custom as the basis upon which she could predicate a claim of breach of duty in that regard by reason of the failure of the defendant to report the existence of the map of proposed grade changes affecting the streets adjoining the parcel involved. In the absence of such proof, plaintiff, in order to sustain this negligence count, should have pleaded and proved that she had, through McDonald or otherwise, in addition to directing the usual search of title to be made, specifically requested that the defendant report to her any evidence in official offices which would affect the physical condition of abutting streets. Upon such proof could be predicated a claim of negligence on the part of the defendant if it failed to live up to this specific engagement by a failure to report a proposed change of grade revealed on a map on file in the topographical bureau. Such breach of duty, resting upon a special engagement of the character indicated, would take the case beyond the measure of duty arising in the case of an ordinary search, such as was directed by the plaintiff to be made by the defendant herein. There is no proof of any such special engagement in this case. Accordingly, there is no evidence in this case which would support a finding of negligence on the part of the defendant operating to the plaintiff's damage, and the cause of action predicated upon negligence should, therefore, have been dismissed.

The judgment should be reversed upon the law, with costs, and the complaint dismissed, with costs.

LAZANSKY, P. J., YOUNG, HAGARTY and SEEGER, JJ., concur.

Judgment reversed upon the law, with costs, and complaint dismissed, with costs.