CHICAGO TITLE INSURANCE COMPANY vs. ANIL KUMAR,
trustee.

Suffolk.  March 19, 1987. — April 13, 1987.

Present: GREANEY, C.J., CUTTER, & SMITH, JJ.

*Hazardous Waste.  Real Property,* Title insurance, Marketable title. *Insurance;* Title insurance.

A policy of title insurance issued to the grantee of a parcel of land, insuring against loss from any "defect in or lien or encumbrance on" the title, and "[u]nmarketability of such title," provided no coverage either with respect to any claim arising out of the grantor's failure to record in the appropriate registry of deeds a notice of disposal of hazardous waste pursuant to G. L. c. 21C, § 7, or with respect to any lien in favor of the Commonwealth which might arise in the future pursuant to G. L. c. 21E, § 13, as the result of the release of hazardous material on the land. [56-57]

CIVIL ACTION commenced in the Land Court Department on February 4, 1986.

The case was heard by *Marilyn M. Sullivan, J.,* on a motion for summary judgment.

*Harlan M. Doliner* (*Cynthia L. Amara* with him) for the defendant.

*Richard W. Renehan* for the plaintiff.

GREANEY, C.J. By its action in the Land Court, the plaintiff sought: (1) a determination pursuant to G. L. c. 185, § 1 (*k*), that there is no cloud on, or unmarketability of, the defendant's title to a parcel of land in Chelmsford; and (2) a declaration pursuant to G. L. c. 231A, § 1, that a policy of title insurance issued by the plaintiff to the defendant does not afford coverage against a claim arising out of a previous grantor's failure to record a notice as required by the Massachusetts Hazardous Waste Management Act, G. L. c. 21C, § 7. A judge of the Land Court determined, on cross-motions for summary judg-

ment, that there was no genuine issue of material fact and prepared a memorandum of decision deciding the dispute in the plaintiff's favor. Judgment entered declaring that the "defendant's title insurance policy . . . issued by the plaintiff does not afford coverage against a claim arising out of a grantor's failure to record a notice as required by G. L. c. 21C, § 7," and that "there is no cloud, lien or encumbrance on, or unmarketability of, the defendant's title to [his] land . . . which arises from the presence of hazardous material thereon and which was in existence at the date of [issuance of the title] policy. . . ." The defendant appealed from the judgment. We affirm.

On October 2, 1984, the defendant purchased, as an individual, a parcel of property at 11 School Street in Chelmsford. The property consists of approximately fourteen acres, two of which contain an industrial site with an abandoned manufacturing building and twelve of which consist of a mill pond. Before purchasing the property, the defendant commissioned an environmental site assessment by an expert firm. The firm reported that "no oil or hazardous material is currently stored on site, and that the available evidence indicates that there has not been a release of oil or hazardous material at the . . . site." The defendant also obtained a standard title insurance policy from the plaintiff which did not contain any special endorsement extending coverage to claims relating to hazardous material.

On May 22, 1985, the defendant received a bank commitment to purchase an industrial revenue bond from the town in the amount of $1.2 million. The proceeds were to be lent to the defendant, who expressed an intention to build an industrial facility on the site. Among other matters in the loan commitment, the bank required a separate title insurance policy for the mortgage securing the loan. That policy was to "insur[e] the [b]ank's interest as a valid first lien at the time the transaction is closed" and specifically was to provide coverage "in regard to hazardous waste." The bank's commitment letter did not require (or even mention) affirmative coverage for hazardous material in the defendant's policy.

On June 15, 1985, the defendant transferred the property to himself as trustee and closed the bank loan. The plaintiff issued a lender's title insurance policy to the bank with a special endorsement providing coverage for hazardous material. On August 31, 1985, the plaintiff issued another standard title policy to the defendant in his capacity as trustee. This policy was identical to the one previously issued to him when he had owned the property individually. Neither policy issued to the defendant contained any special coverage for hazardous material. During the loan closing, a transaction that the judge described as "sophisticated," the defendant was represented by independent counsel.

On October 31, 1985, hazardous material was discovered on the property. On December 4, 1985, the Department of Environmental Quality Engineering (DEQE) sent the defendant a notice under G. L. c. 21E, the Massachusetts Oil and Hazardous Material Release and Response Act, advising that a release of hazardous material had occurred on the property and directing the defendant to take cleanup measures. Under § 5 of G. L. c. 21E the owner of property on which there has been a release of hazardous material is liable to the Commonwealth for cleanup of the site. Liability does not accrue until the Commonwealth is required to expend funds on the owner's behalf. At that point, the Commonwealth can attach a lien to the property under § 13 of G. L. c. 21E by recording a statement of claim in the appropriate registry of deeds. Neither at the time the defendant's policies were issued, the relevant times under those policies, nor at any time thereafter has the Commonwealth or the DEQE recorded a statement of claim.

On January 2, 1986, the defendant wrote to the plaintiff seeking payment under the second policy. He claimed that his title was clouded and unmarketable because his grantor had failed to record, prior to the sale of the property, a notice of the existence of hazardous waste as required by G. L. c. 21C, § 7, for the protection of third parties such as the defendant. The plaintiff denied the claim and commenced this action in the Land Court to obtain a judicial determination of its responsibility. The defendant by counterclaim sought a declaration

that the release of hazardous material constitutes a defect in title within the meaning of the policy and that the Commonwealth's power to impose a future lien under G. L. c. 21E renders his title unmarketable.[1]

The dispositive issue is whether the ongoing but undiscovered release of hazardous material on the insured parcel at the time of the conveyance of title to the defendant without record notice pursuant to G. L. c. 21C, § 7, is, under the terms of the policy, a "defect in or lien or encumbrance on such title" or constitutes "[u]nmarketability of such title."[2] We hold that this condition is not a defect in or lien or encumbrance on the title and that it does not constitute unmarketability of title.

The mere possibility that the Commonwealth may attach a future lien under G. L. c. 21E, § 13, as a result of the release of hazardous material (existing but unknown at the time a title insurance policy is issued) when the Commonwealth has neither expended moneys on the property requiring reimbursement nor recorded the necessary statement of claim, is insufficient to create a "defect in or lien or encumbrance on . . . title." Nor can the failure of prior owners to record the notice of disposal required by G. L. c. 21C, § 7, have such effect. In the absence of further circumstances, we perceive a difference between the condition of the title to land and the physical state of the land. Protection as to the former is what the plaintiff's title insurance policy furnished when it provided coverage against defects in, or liens or encumbrances on, title. In this respect, the policy focused on liens actually in existence at the time it was written, not liens which might arise in the future. To hold otherwise on these facts would compel title insurance companies, when more specific coverage has not been requested, to perform a

---

[1] We note, as an aside, that the defendant has also filed suit against the prior owner of the property and the firm which conducted the environmental site assessment on the defendant's behalf.

[2] The defendant does not claim that there are any factual questions with respect to matters such as waiver, estoppel, or false representations which might afford protection to the defendant beyond the language of the policy and make disposition of the case by summary judgment inappropriate. He does not assert that the issuance of the first policy to him in his individual capacity adds anything to his claim.

physical inspection or survey of the land for buried hazardous material.[3]

We also reject the defendant's arguments that the possibility under c. 21E that a future lien might attach to the property, and the potential liability for the cleanup of hazardous material, renders the title unmarketable. Again, the defendant confuses economic lack of marketability, which relates to physical conditions affecting the use of the property, with title marketability, which relates to defects affecting legally recognized rights and incidents of ownership. "One can hold perfect title to land that is valueless; one can have marketable title to land while the land itself is unmarketable." *Hocking* v. *Title Ins. & Trust Co.*, 37 Cal. 2d 644, 651 (1951). The presence of hazardous material may affect the market value of the defendant's land, but, on the present record, it does not affect the title to the land.

No Massachusetts decision has examined the point in issue. However, the views we have expressed are in accord with decisions in other States that have discussed related issues, see *Edwards* v. *St. Paul Title Ins. Co.*, 39 Colo. App. 235 (1977); *Hocking* v. *Title Ins. & Trust Co., supra*; *Sperling* v. *Title Guar. & Trust Co.*, 227 A.D. 5 (N.Y. App. Div. 1929), aff'd, 252 N.Y. 613 (1930), and the one decision that has directly decided the precise question. See *United States* v. *Allied Chem. Corp.*, 587 F. Supp. 1205, 1206-1207 (N.D. Cal. 1984). Our resolution of the case renders it unnecessary to consider whether the exclusions in the policy, particularly the exclusion for the exercise of rights of police power not appearing in the public records, bar coverage of the defendant's claim. It is also unnecessary to discuss the defendant's other arguments in support of coverage.

*Judgment affirmed.*

---

[3] As the judge, who has had considerable experience in the area of conveyancing, noted: "The conveyancing bar . . . always have construed such references [viz., references to defects in, or liens or encumbrances on, title] as pertaining to the record title to the premises, not its physical make up."