A94A1688. CHICAGO TITLE INSURANCE COMPANY v. INVESTGUARD, LTD.
A94A1689. INVESTGUARD, LTD. v. CHICAGO TITLE INSURANCE COMPANY et al.
A94A1690. MARSHALL et al. v. INVESTGUARD, LTD.

(449 SE2d 681)

ANDREWS, Judge.

These three cases arose out of Investguard, Ltd.'s foreclosure on a tract of property conveyed to it as collateral for a loan to Jack Jennings. Jennings purchased the property in question in 1988 with funds borrowed from Investguard, and Investguard retained a deed to secure debt on the property. At the time of the purchase, Chicago Title Insurance Company ("Chicago Title") issued a title insurance policy on the property, insuring against encumbrance, defective title, lack of right of access and unmarketability of title.

When Jennings failed to repay the loan, Investguard foreclosed and took title to the property. Investguard later determined that part of the property was located in a flood plain and that it apparently lacked any means of access to a public road. Investguard made a written claim on the title insurance policy issued by Chicago Title for both conditions, which Chicago Title denied.

Chicago Title subsequently commenced this action seeking declaratory judgment that the property did not lack access to a public road and that the flood plain condition was not covered under the policy. Investguard counterclaimed for breach of contract and bad faith refusal to pay. As to the flood plain issue, Investguard contended that the property's location within a flood plain rendered title to the property unmarketable, that matters of survey were covered by the policy, and that physical inspection or accurate survey would have disclosed the flood plain condition. Investguard also counterclaimed against Marshall and his law firm, who performed the title search and

certified the title, for breach of contract and professional negligence in failing to disclose the lack of access and flood plain conditions.

The trial court granted summary judgment to Chicago Title, and Marshall and his law firm, on the access issue but denied it on the flood plain issue, finding a genuine issue of material fact as to the marketability of the property due to its location in a flood plain. Chicago Title appeals from the denial of its summary judgment motion on that issue in Case No. A94A1688,[1] and in Case No. A94A1689 Investguard cross-appeals from the grant of summary judgment for Chicago Title on the access issue. In Case No. A94A1690, Marshall and his law firm cross-appeal from the denial of their summary judgment motion with respect to the flood plain issue.

### Case No. A94A1688

1. Chicago Title contends the trial court erred in denying its motion for summary judgment on the flood plain issue, claiming that location within a flood plain is a mere physical condition of the property that may diminish its value but does not constitute unmarketability of title. "A good title means not merely a title valid in fact, but a marketable title which can again be sold to a reasonable purchaser or mortgaged to a person of reasonable prudence as a security for the loan of money." (Citations and punctuation omitted.) *Ardex, Ltd. v. Brighton Homes*, 206 Ga. App. 606, 608 (426 SE2d 200) (1992).

"[T]he liability of an insurer under a title insurance policy is for loss or damage by reason of defects in the title to the property or by reason of liens or encumbrances thereon. . . . The coverage of title insurance extends to reasonably anticipated implications of ownership which attach to the insured by reason of the record, but does not extend beyond that point." (Citation and punctuation omitted.) *U. S. Life Title Ins. Co. v. Hutsell*, 164 Ga. App. 443, 445 (296 SE2d 760) (1982).

No Georgia decision appears to have addressed the question of whether location of the property within a flood plain renders title unmarketable. However, those courts which have addressed the issue of whether defects in the physical condition of the property are covered by title insurance have generally held that such defects do not constitute unmarketability of title. See *Chicago Title Ins. Co. v. Kumar*, 506 NE2d 154 (Mass. App. 1987); *Title &c. Co. of Fla. v. Barrows*, 381 S2d 1088 (Fla. App. 1979); *Hocking v. Title Ins. &c. Co.*, 234 P2d 625 (Cal. 1951); *Sperling v. Title Guar. &c. Co.*, 236 NYS 553 (N.Y. 1929),

---

[1] We granted Chicago Title's application for interlocutory appeal from the partial denial of its summary judgment motion.

aff'd 170 NE 163 (1930).

We agree with the above-cited decisions that a difference exists between economic lack of marketability, which relates to physical conditions affecting the use of the property, and title marketability, which relates to defects affecting legally recognized rights and incidents of ownership. See *Kumar*, supra at 157. "One can hold perfect title to land that is valueless; one can have marketable title to land while the land itself is unmarketable." *Hocking*, supra at 629. Although location of part of the property in a flood plain may affect its market value, it does not affect the marketability of title to the property. Accordingly, the trial court erred in denying summary judgment for Chicago Title on this issue.

Investguard defends the trial court's denial of summary judgment for Chicago Title on the flood plain issue, on the basis that factual issues existed as to whether the flood plain would have been disclosed by inspection or an accurate survey, and whether matters of survey were insured by the policy. However, in light of our above holding that the location of property in a flood plain does not constitute a title defect, the discovery of that particular physical characteristic by inspection or survey would provide no basis for Investguard's recovery.

## Case No. A94A1689

2. The subject property in these appeals is separated from a public road by two other tracts that formerly were owned by Jennings. Investguard contends that the trial court erred in granting summary judgment for Chicago Title, Marshall, and Marshall's law firm on the access issue, because issues of fact existed as to whether there was access from the property to that public road.

Prior to purchasing the property in question, Jennings executed a deed to secure debt on the second tract to Sidney Miller as security for a loan. In that deed, the second tract was described as "Section Two on a plat by Byron L. Farmer and dated October 15, 1986, the same being a compiled plat." The plat itself, which was not recorded, showed two parallel lines beginning from the northern edge of the second tract and extending across both that tract and the third tract into the subject property. It also bore the designation "R/W," 60′, a scale of one inch equals 50 feet, and an arrow indicating north. Also before purchasing the property in question, Jennings conveyed the third tract to Empire Financial Services, Inc., pursuant to a deed under power of sale, and that deed contained a reservation of a 60-foot-wide easement for ingress and egress to the subject property.

"[W]here a deed to land refers to a map or plat as a part of the description of the land conveyed, such map or plat will ordinarily be

considered as incorporated in the deed itself. . . ." *Spencer v. Poole*, 207 Ga. 155, 156 (60 SE2d 371) (1950). Further, where a plat is so incorporated by reference in a deed, " 'the plat itself and the words and marks on it are as much a part of the grant or deed, and control, so far as limits are concerned, as if such descriptive features were written out on the face of the deed or grant itself.' [Cit.]" *Etheridge v. Fried*, 183 Ga. App. 842, 843 (360 SE2d 409) (1987).

With regard to the second tract of land, the description of the property indicated on the unrecorded plat prepared by Byron Farmer thus became part of the deed to secure debt Jennings executed in favor of Miller. We agree with the trial court that this incorporated plat established an easement across the second tract of land.

The 60-foot-wide parallel lines across the property indicated on the plat designated as "R/W" can be reasonably interpreted only as an easement. See *Hardigree v. Hardigree*, 244 Ga. 830 (262 SE2d 127) (1979). Further, the plat indicated that it was drawn to scale, with one inch equaling 50 feet, and designated which direction was north. Applying those keys to the plat, the exact dimensions and location of the easement could be determined. *Lawyers Title Ins. Corp. v. Nash*, 196 Ga. App. 543 (1) (396 SE2d 284) (1990).

With regard to the third tract, Investguard acknowledges that the deed executed by Jennings to Empire Financial Services purported to reserve a 60-foot-wide roadway across the tract to the adjoining property, but it contends that the general reservation of a roadway across the property was too indefinite to create an easement because it failed to specify the path of the roadway.

However, there is no absolute requirement of indicating the exact path of an easement. "Perfection in legal descriptions of tracts of land is not required. If the premises are so referred to as to indicate the grantor's intention to convey a particular tract of land, extrinsic evidence is admissible to show the precise location and boundaries of such tract. The test as to the sufficiency of the description of property contained in a deed is whether or not it discloses with sufficient certainty what the intention of the grantor was with respect to the quantity and location of the land therein referred to, so that its identification is practicable." (Citations and punctuation omitted.) *McCann v. Miller*, 177 Ga. App. 53, 54 (2) (338 SE2d 509) (1985). See also *Lawyers Title Ins. Corp. v. Nash*, supra.

In the instant case, the deed indicates a clear intention to reserve an easement and establishes the width of that roadway easement. The starting and ending points of that roadway can be easily ascertained by reference to the same plat that was incorporated by reference to the deed to secure debt on the second tract. Under these circumstances, the easement granted on the third tract was identifiable, and the trial court thus correctly determined that access to the subject

property existed by virtue of the easements Jennings created on the second and third tracts.

### Case No. A94A1690

3. Investguard counterclaimed against Marshall and his law firm on the ground that the latter owed it a duty to warn of any conditions, such as lack of access and the flood plain issue, that rendered the title to the property unmarketable. In granting summary judgment for Marshall and his law firm on the access issue, the trial court concluded that its finding that access to the property did exist mooted this related claim against Marshall and the law firm. Similarly, in light of our holding in Division 1 that the location of the subject property in a flood plain did not constitute a title defect, and absent any other obligation of Marshall and the law firm to discover and disclose the flood plain condition, Marshall and his law firm were also entitled to summary judgment on the flood plain issue.

*Judgment affirmed in Case No. A94A1689. Judgments reversed in Case Nos. A94A1688 and A94A1690. Beasley, P. J., and Johnson, J., concur.*

DECIDED NOVEMBER 3, 1994.

*Varner, Stephens, Wingfield & Humphries, James T. White, Fellows, Johnson, Davis & LaBriola, G. Terrell Davis,* for Chicago Title.

*Pursley, Howell, Lowery & Meeks, Charles N. Pursley, Jr., Susan S. Jones,* for Investguard.

*Arnall, Golden & Gregory, Halsey G. Knapp, Jr., Anthony W. Morris,* for Marshall.