**Richard G. ROOD, Appellant**

v.

**COMMONWEALTH LAND TITLE INSURANCE COMPANY,**
**Appellee.**

Superior Court of Pennsylvania.

Argued July 11, 2007.

Filed Oct. 18, 2007.

Reargument Denied Dec. 21, 2007.

Joseph A. O'Keefe, Kutztown, for appellant.

Edward J. Hayes, Philadelphia, for appellee.

Before: JOYCE,* PANELLA and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Appellant Richard G. Rood appeals the grant of summary judgment in favor of Appellee Commonwealth Land Title Insurance Company on grounds that the trial court erred in refusing to interpret "defect" under the title insurance policy to encompass an abandoned septic tank. Appellant also challenges the order granting Appellee's preliminary objections in the nature of a demurrer to his claims for breach of contract (Count II) and breach of the duty of good faith and fair dealing (Count IV). After review, we affirm.

¶ 2 The facts and procedural history of this case were articulated by the trial court as follows; to-wit:

[Appellant] commenced this class action on January 3, 2006 by filing a Complaint against [Appellee]. [Appellant's] Complaint concerns the existence of a septic tank on the real property located at 521 Delancey Circle in Devon, Pennsylvania ("property"). [Appellant] purchased the property on August 6, 1970. When he purchased the property, [Appellant] received a title insurance policy ("policy") from [Appellee].

In April 2005, a sink hole occurred on the front portion of the property belonging to [Appellant's] neighbor. The hole

* Judge Joyce did not participate in the consideration or decision of this

was caused by an abandoned septic tank, which was located on the neighbor's property. The discovery of the neighbor's septic tank prompted [Appellant] to inquire as to whether there was a septic tank on his property as well; upon further inquiry, [Appellant] discovered that his property also contained an abandoned septic tank in the front yard. [Appellant] subsequently learned that the abandoned tank was documented at the offices of Tredyffrin Township in a public record entitled "Record of Sanitary Drainage and Plumbing Fixtures." [n. 1] As a result of his discovery, and because he did not obtain prior notices of the tank's existence when he had contracted with [Appellee] to provide title insurance, [Appellant] contacted [Appellee] to demand remediation of some kind, either removal or filling in of the abandoned tank. [Appellee] denied [Appellant's] demand in a letter dated November 3, 2005.

As part of a group of class actions filed by [Appellant's] counsel, a Complaint was filed against [Appellee] containing the following counts: (1) Violation of the Unfair Insurance Practices Act; (2) Breach of Contract; (3) Fraudulent Misrepresentation; (3) Breach of Duty of Good Faith and Fair Dealing; and (5) Declaratory Relief. By order dated March 30, 2006, th[e trial] court dismissed the breach of contract claim, the fraudulent misrepresentation claim, and the good faith and fair dealing claim. Although [Appellant] was permitted to file an Amended Complaint with respect to the claim of fraudulent misrepresentation, he failed to do so.

---

[n. 1.] [Appellee] stipulated to the existence of the septic tank on the property.

Trial court opinion, 2/20/06, at 1–2 n. 1. Thereafter, Appellee filed a motion for summary judgment, the trial court granted the same, and Appellant filed a notice of appeal objecting to its entry because of outstanding discovery motions: "The outstanding matters at issue in those motions pertain[ed] to material facts in dispute and preclude[d] summary judgment in favor of [Appellee]." Appellant's brief, at 37.

■ ¶ 3 Before addressing the merits of the issue posed, we note that our standard of review in evaluating a grant of summary judgment permits us to disturb that order only if the court granting the motion committed an error of law or abuse of discretion. This matter presents a question of law, for which our scope of review is plenary. *Sevast v. Kakouras*, 591 Pa. 44, 915 A.2d 1147, 1152 (2007). Stated otherwise, as to whether interpretation of an insurance policy is a question for the court or jury, there is simply no question that it is for the court. As the Pennsylvania Supreme Court said in *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 304–05, 469 A.2d 563, 566 (1983), "The task of interpreting a contract is generally performed by a court rather than a jury [...]."

¶ 4 The Pennsylvania Rules of Civil Procedure governing summary judgment instruct, in relevant part, that the court shall enter judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action. Pa.R.C.P. 1035.2(1). In considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Jones v. SEPTA*, 565 Pa. 211, 772 A.2d 435, 438 (2001). Finally, the court may grant summary judgment only when the right to such a judgment is clear and free from doubt.

*Marks v. Tasman,* 527 Pa. 132, 589 A.2d 205, 206 (1991).

¶ 5 We discern Appellant's summary judgment argument to be grounded upon an interpretation of the title insurance policy equating "abandoned septic tank" with a "defect, lien or encumbrance on the title of the estate" to allow for coverage.

■■■■ ¶ 6 Generally speaking, a title insurance policy is subject to the same rules of construction that govern other insurance policies. *Hansen v. Western Title Insurance Co.,* 220 Cal.App.2d 531, 33 Cal. Rptr. 668, 671 (1963); *Feldman v. Urban Commercial, Inc.,* 78 N.J.Super. 520, 527, 189 A.2d 467, 471 (1963), *aff'd,* 87 N.J.Super. 391, 209 A.2d 640 (1965). Although a title insurance policy is to be liberally construed in favor of the insured, this Court must consider the language of the policy and the expectation of the insured so as to give reasonable meaning to its terms. *Scott v. Southwestern Mutual Fire Association,* 436 Pa.Super. 242, 647 A.2d 587, 590 (1994), *appeal denied,* 539 Pa. 694, 653 A.2d 1232 (1994); *Feldman, supra.* If any ambiguity exists, an insurance policy should be liberally construed in favor of the insured party to maximize coverage. *Penn–Air Inc. v. Indemnity Insurance Co. of North America,* 439 Pa. 511, 517, 269 A.2d 19, 22 (1970); *Techalloy Co. v. Reliance Insurance Co.,* 338 Pa.Super. 1, 487 A.2d 820, 823 (1984). In making such a determination, we must examine the title insurance policy prepared by Appellee, which reads in relevant part:

[Appellee], a Pennsylvania corporation, [ . . . ] **for a valuable consideration, does hereby insure [Appellant]** named in Schedule A annexed as the [I]nsured, [ . . . ] **against loss or damage** not exceeding the amount first set forth in Schedule A, together with costs, attorneys fees and expenses which [Appellee] may become obligated to pay as provided in the Conditions and Stipulations hereof, **which [Appellant] shall sustain by reason of:**

**Any defect in or lien or encumbrance on the title to the estate or interest covered hereby in the land described** or referred to in Schedule A, existing at the date hereof, no [sic] shown or referred to in Schedule B or excluded from coverage in Schedule B or in the Conditions and Stipulations; or unmarketability of such title [ . . . ];

all subject, however, to the provisions of Schedules A and B and to the Conditions and Stipulations hereto annexed; all *as of the date first set forth in Schedule A, the effective date of this policy.*

\* \* \* \*

**SCHEDULE A**

AMOUNT $40,000.00 DATE August 6, 1970 POLICY NO. C–388639–B

INSURED: [Appellant] and ROMAINE L. ROOD, HIS WIFE

. \* \* \* \*

**SCHEDULE B**

This policy does not insure against loss or damage by reason of the following: Encroachments, easements not of record and discrepancies or conflicts in boundary lines.

\* \* \* \*

CONDITIONS AND STIPULATIONS

1. Definitions of Terms

The following terms when used in this policy mean:

(a) "land": the land described, specifically or by reference, in Schedule A and improvements affixed thereto which by law constitutes real property;

(b) *"public records": those records which impart constructive notice of matters relating to said land*;

(c) "knowledge": actual knowledge, not constructive knowledge or notice which may be imputed to the Insured by reason of any public records; and

(d) "date": the effective date.

2. Exclusions from the Coverage of this Policy

This policy does not insure against loss or damage by reason of the following:

(a) Any law, ordinances or government regulation (including but not limited to building and zoning ordinances) restricting or regulating or prohibiting the occupancy, use or enjoyment of the land, or regulating the character, dimensions, or location of any improvement now or hereafter erected on said land, or prohibiting a separation in ownership or a reduction in the dimensions or area of any lot or parcel of land.

(b) Governmental rights of police power or eminent domain unless notice of the exercise of such rights appears in the public record at the date hereof.

(c) Title to any property beyond the lines of the land expressly described or referred to in Schedule A, or title to areas within or rights or easements in any abutting streets, roads, avenues, lanes, ways or waterways (except to the extent the right of access to and from said land is covered by the insuring provisions of this policy), or the right to maintain therein vaults, tunnels, ramps or any other structure or improvement, unless this policy spe-

cifically provides that such title, rights or easements are insured

(d) **Defects,** liens, encumbrances, adverse claims against the title as insured or other matters (1) created, suffered, assumed or agreed to by the Insured; or (2) known to the Insured either at the date of this policy or at the date such Insured acquired an estate or interest insured by this policy and not shown by the public records, unless disclosure thereof in writing for the Insured shall have been made to [Appellee] prior to the date of this policy; or (3) resulting in no loss to the Insured; or (4) attaching or created subsequent to the date hereof.

Reproduced Record at 047, 048 (emphasis added).

¶ 7 Under Pennsylvania law, *The sole object of title insurance is to cover possibilities of loss through defects that may cloud or invalidate titles.* It is for the assumption of whatever risk there may be, in such connection, that the premium is paid to, and accepted by, the company which issues the policy. Title insurance is not mere guesswork, nor is it a wager. *It is based upon careful examination of the muniments of title, and the exercise of judgment by skilled conveyancers.*

\* \* \* \*

A policy of title insurance means the opinion of the company which issues it, as to the validity of the title, backed by an agreement to make that opinion good, in case it should prove to be mistaken, and loss should result in consequence to the insured.

\* \* \* \*

*"Title insurance is an agreement whereby the insurer, for a valuable*

*consideration, agrees to indemnify the insured in a specified amount against loss through defects of title to real estate wherein the latter has an interest, either as purchaser or otherwise."* Frost on Guaranty Insurance, sec. 162. *A contract of title insurance is also defined as "a contract to indemnify against loss through defects in the title to real estate or liens or incumbrances thereon[.]"* 1 Cooley on Insurance, 12.

*It must be borne in mind that the real subject of insurance is not the concrete thing, but the interest which the one to be indemnified has in the concrete thing.*

*Foehrenbach v. German–American Title & Trust Company,* 217 Pa. 331, 336–37, 66 A. 561, 563 (1907) (emphasis added). *Accord Hicks v. Saboe,* 521 Pa. 380, 384, 555 A.2d 1241, 1243 (1989) ("The purpose of title insurance is to protect the insured, the buyer, from loss arising from defects in the title which he acquires." *See* Couch on Insurance 2d § 48:110; *Hooper v. Commonwealth Land Title Insurance Co.,* 285 Pa.Super. 265, 427 A.2d 215, 217 (1981)); *Fifth Mut. Bldg. Socy. of Manayunk's Appeal,* 317 Pa. 161, 164–65, 176 A. 494, 495 (1935) ("The [title insurance] contract is one of insurance against defects in title, unmarketability, liens, and incumbrances. [...] Title insurance [...] is designed to save [the insured] harmless from any loss through defects, liens, or incumbrances that may affect or burden his title when he takes it.") (citation omitted); *Pittsburgh Coal & Coke, Inc. v. Cuteri,* 404 Pa.Super. 298, 590 A.2d 790, 795 (1991) ("title insurance indemnif[ies] the insured against loss occasioned by a 'defect of title to real estate wherein the insured has an interest either as a purchaser or otherwise.' " (citation omitted)), *rev'd on other ground,* 533 Pa. 311, 622 A.2d 284 (1993) (remanded to allow plaintiff to amend complaint); *Tri-*

*giani v. American Title Insurance Co.,* 392 Pa.Super. 427, 573 A.2d 230 (1990) ("A contract of title insurance is an agreement to indemnify against loss through defects of title." (citation omitted)); *Sattler v. Philadelphia Title Insurance Co.,* 192 Pa.Super. 337, 162 A.2d 22, 24 (1960) (same).

■ ¶ 8 Contracts of professional title insurance companies, being ordinarily in terms prescribed by themselves, should be construed strictly in favor of the buyer. *See Narberth Bldg. & Loan Ass'n v. Bryn Mawr Trust Co.,* 126 Pa.Super. 74, 190 A. 149, 151 (1937). Approaching the problem with that admonition in mind, we are still of the opinion that Appellant is not entitled to coverage because of the abandoned septic tank. We arrive at this conclusion despite his argument that his title is rendered unmarketable because he would have to disclose the presence of the abandoned septic tank were he to sell the home under Pennsylvania's Real Estate Sellers Disclosure Law and this disclosure might cause a reduction in price. *See* Appellant's Reply Brief, at 2. We find a dearth of authorities dealing with this precise question, but our sister states have tackled similar issues, which we look to for guidance in this uncharted area of title insurance law.

¶ 9 In *Chicago Title Insurance Co. v. Kumar,* 24 Mass.App.Ct. 53, 506 N.E.2d 154 (1987), a landowner alleged that release of hazardous material was a defect in title within the meaning of his title insurance policy and that the Commonwealth's power to impose a future lien under Mass. Gen. L. ch. 21E, § 13 (1986) rendered his title unmarketable. The Massachusetts Appeals Court, however, found that the possibility of a future lien did not give the landowner a cause of action. In the course of so holding, the Court stated, as herein relevant:

In the absence of further circumstances, we perceive a difference between the condition of the title to land and the physical state of the law. Protection as to the former is what the plaintiff's title insurance policy coverage furnished when it provided coverage against defects in, or liens or encumbrances on, title. [. . .] [n. 3]

\* \* \* \*

We also reject the defendant's argument that the possibility under ch. 21E that a future lien might attach to the property, and the potential liability for the cleanup of hazardous material, renders the title unmarketable. Again, the defendant confuses economic lack of marketability, which relates to physical conditions affecting the use of the property, with title marketability, which relates to defects affecting legally recognized rights and incidents of ownership. "One can hold perfect title to land that is valueless; one can have marketable title to land while the land itself is unmarketable." *Hocking v. Title Ins. & Trust Co.*, 37 Cal.2d 644, 651, 234 P.2d 625 (1951). The presence of hazardous material may affect the market value of the defendant's land, but, on the present record, it does not affect the title to the land.

---

[n. 3] As the judge, who has had considerable experience in the area of conveyancing, noted: "The conveyancing bar [. . .] always have construed such references [*viz.*, references to defects in, or liens or encumbrances on, title] as pertaining to the record title to the premises, not its physical make up."

*Chicago Title Insurance Co.*, 24 Mass.App. Ct. at 56, n. 3, 506 N.E.2d at 156, n. 3. *Accord Super Fitness of Malden v. WJG Realty Trust*, 2001 WL 34038576, 2001 Mass.Super. Lexis 663 (2001); *Somerset Sav. Bank v. Chicago Title Ins. Co.*, 420 Mass. 422, 649 N.E.2d 1123 (1995).

¶ 10 In *Logan v. Virginia Barretto, et al.*, 251 A.D.2d 552, 675 N.Y.S.2d 102 (1998), *appeal denied*, 92 N.Y.2d 815, 683 N.Y.S.2d 174, 705 N.E.2d 1215 (1998), the plaintiffs/purchasers sued Appellants/multiple title insurance companies on grounds that they breached their contractual obligations by failing to disclose the existence of Sanitary Code violations in their title report, which related to two Westchester County Department of Health notices of non-compliance issued to the seller stating that sewage was being discharged onto the surface of the property in violation of the County Sanitary Code. Despite the fact that the purchaser did not learn of the notices of non-compliance to the seller until over three years after the sale, the trial court granted summary judgment in the purchaser's favor. In reversing, however, the New York Supreme Court stated:

A policy of title insurance protects a property owner "against loss by reason of defective titles and encumbrances and insur[es] the correctness of searches for all instruments, liens or charges affecting the title to such property[.]" [. . .] "[T]he liability of the title insurer to its insured is essentially based on contract law [and] is governed and limited by agreements, terms, conditions and provisions contained in the title insurance policy[.]'" Here, the [A]ppellants' standard title insurance policy afforded the plaintiffs coverage for loss occasioned by a defect in title, including liens or encumbrances on the title, or unmarketability of the title. Contrary to the plaintiffs' contention, the notices of non-compliance issued by the County Department of Health are not encumbrances on the title, and do not render title unmarketable. "[M]arketability of title is concerned with impairments on title to a property, *i.e.*, the right to unencumbered ownership and possession,

not with legal public regulation of the use of the property[.]" Since the Sanitary Code provisions regulate the manner in which the property can be used and do not impair title, the damages claimed by the plaintiffs do not fall within the scope of the title insurance policy. Accordingly, the [A]ppellants are entitled to summary judgment dismissing the complaint insofar as asserted against them.

*Logan,* 251 A.D.2d at 552, 675 N.Y.S.2d at 102 (citations omitted).

¶ 11 In *Lombardo v. Pierson,* 121 Wash.2d 577, 852 P.2d 308 (1993), Appellant brought suit against a title insurance company for failing to disclose a document uncovered during a title search conducted prior to the purchase of her farm, which alluded to potential seepage problems. The Supreme Court of Washington affirmed the trial court's dismissal of the title insurance company from the lawsuit because the document did not affect title, or otherwise encumber the property. Pertinent to our case, the Court stated:

> Although seepage lowers the value of the farm and limits its beneficial uses, [...] the Agreement to Retain Land does not affect title to [Appellant's] farm.

Nonetheless, [Appellant] argues that the duty to search and disclose should not apply only to documents affecting title, but to "all matters affecting the property that are of 'public record'." In this case, [the title insurance company] found a document [Agreement to Retain Land] "of critical importance" to [Appellant's] decision on whether to purchase the land and failed to disclose it. Brief of Appellant, at 19. According to [Appellant], had [the title insurance company] simply chosen to photocopy the five pages of the Agreement to Retain Land[,] she would have been spared the financial disaster of purchasing the farm.

[Appellant] fails to cite any cases adopting the proposed broad rule that a title company must disclose all recorded documents, regardless of whether they implicate title. In fact, in *Klickman v. Title Guaranty Co.*[, 105 Wash.2d 526, 716 P.2d 840 (1986)], we decided this issue to the contrary.

\* \* \* \*

Numerous other courts have also found that a duty to search and disclose should not extend beyond documents which affect title. For example, in *Roscoe v. U.S. Life Title Insurance Co.,* 105 N.M. 589, 734 P.2d 1272 (1987), the court held that the title company violated no duty in its failure to disclose a balloon payment contained in the underlying real estate mortgage. It was not necessary for the insurer to search beyond what was required for the title insurance—*i.e.,* documents affecting title. 105 N.M. at 591, 734 P.2d 1272. [ . . . ].

*Lombardo,* 852 P.2d at 311 (footnote omitted).

¶ 12 Herein, consistent with the preceding, we hold that while Appellant's property may be unmarketable due to the existence of the septic tank, the title to the property is not. *Cf. Narberth Bldg. & Loan Ass'n,* 190 A. at 151 (in discussing indemnification against loss or damage sustained by reason of defects of title and liens upon the land, this Court stated: "The loss actually suffered was due entirely to failure of value and not in any respect to failure of title.").

¶ 13 Title insurance is designed to protect the insured, and save him harmless from any loss arising through defects, liens or encumbrances that may be in existence, affecting the title when the

policy is issued. *Foehrenbach,* at 337, 66 A. at 563. However, it does not protect against any claim arising from any physical condition concerning the property, which in this case was a septic tank underneath the realty. *Chicago Title Ins. Co.; Lombardo; Logan, supra.* Further, the duty of the title insurance company to search is restricted to those "public records" which affect the title to the property, as that term has traditionally been understood to encompass, for example, the office of the recorder of deeds and the office of the prothonotary for judgments and liens. *Cf. Somerset Sav. Bank,* 649 N.E.2d at 1127 ("pertinent custom and usage are, by implication, incorporated into a policy and are admissible to aid in policy interpretation, not as tending to contradict or vary a contract, but on the theory that usage forms part of the contract." (citation omitted)).[1]

¶ 14 We find no merit to Appellant's argument that seeks to equate his abandoned septic tank with a "defect, lien or encumbrance" affecting title to the property. The fact that the abandoned septic tank may diminish the value of his property is not reflective of whether Appellant has good and marketable title to the property. Appellant "confuses economic lack of marketability, which relates to physical conditions affecting the use of the property, with title marketability, which relates to defects affecting legally recognized rights and incidents of ownership." *Chicago Title Ins. Co.,* 506 N.E.2d at 156; *see also Chicago Title Ins. Co. v. Investguard, Ltd.,* 215 Ga.App. 121, 449 S.E.2d 681, 683 (1994).

¶ 15 There are many items which might affect the ability of an owner to sell his property, *i.e.,* it may be located in a flood plain, it may be unsound structurally, contain lead paint or asbestos, be situated over an abandoned coal mine or septic tank, have seepage of contaminants into the property, be in violation of the health code, or be adjoining a designated Superfund site, but none has anything to do with the title to the real property. *Chicago Title Ins. Co.; Lombardo; Logan; Investguard, supra.* Because we hold that Appellant's abandoned septic tank does not qualify as a "defect, lien or encumbrance," he is not entitled to coverage under the

---

1. Albeit in the final analysis express terms are to be given preference in interpretation over course of performance and usage of trade, *see Somerset Sav. Bank,* 649 N.E.2d at 1126, herein the term "public record" was defined rather ambiguously in the title insurance policy as: "those records which impart constructive notice of matters relating to said land." *See* Reproduced Record at 048. We interpret such a phrase to impose upon the insurer a duty to search and disclose, but that obligation does not extend beyond the documents which affect title. *See Lombardo,* 852 P.2d at 311. This translates into the Tredyffrin Township records listing the presence of the abandoned septic tank as not coming within the ambit of "defects, liens or encumbrances" which affect title. *Contrast Pennsylvania Laundry Co. v. Land Title and Trust Co.,* 74 Pa.Super. 329, 1920 WL 1533, 1920 Pa.Super. Lexis 150 (1920) (An insurance company issued a policy which undertook to insure the plaintiff's title to a certain piece of ground, excepting such defects as "an official survey would have disclosed." The owners of property adjoining the western line of the plaintiff's lot filed an injunction averring that they had acquired by adverse possession an alley or passageway two feet six inches wide along the westerly portion of the plaintiff's lot. This Court ruled that the alley was an encumbrance, but it was not one "which an official survey would disclose." Therefore, the title insurance company was liable under the policy issued to plaintiff covering "encumbrances" affecting title.). Unlike *Pennsylvania Laundry Co.,* which interpreted a claim in adverse possession to be an "encumbrance" not ascertainable by a surveyor and exposed the insurer to liability, we do not equate an abandoned septic tank with an "encumbrance, defect or lien" affecting title. Thus, Appellant is not entitled to coverage under the title insurance policy issued by Appellee.

title insurance policy issued by Appellee, which was issued to insure the marketability of title limited to impairments on title to the property, *i.e.*, the right to unencumbered ownership and possession, not with the absence of an abandoned septic tank from the property.

¶ 16 Our resolution of the case on the summary judgment issue renders it unnecessary to consider Appellant's challenge to the trial court's grant of Appellee's preliminary objections in the nature of a demurrer wherein he claims breach of contract (Count II) and breach of the duty of good faith and fair dealing (Count IV). *See Chicago Title Ins. Co.*, 506 N.E.2d at 157; *see also Seeley v. Roden*, 118 Wash.App. 1004, 2003 WL 21916387, 2003 Wash.App. Lexis 1781 (2003).

¶ 17 Even if, for the sake of argument, we were to address the preliminary objections issue, we would hold it meritless. Appellant fails to allege any facts to show that his title to the tract of land described in the policy is not a good or marketable one, affected by any defects, liens or encumbrances, nor that the provisions set forth in Schedule B, *supra* (excluding insurance coverage for encroachments, easements not of record and discrepancies or conflicts in boundary lines and dimensions, and any other objection, easements or encumbrances visible on the ground or known to the insured) are not binding upon him. Therefore, Appellee would be entitled to have the preliminary objections in the nature of a demurrer sustained. *See Banas v. Heiney*, 66 Pa. D. & C.2d 286, 288–89 (1973).

¶ 18 For the foregoing reasons, we conclude that the trial court did not err in granting summary judgment in favor of Appellee. We also conclude that the trial court properly sustained Appellee's prelim-

inary objections and dismissed Counts II and IV of the complaint.

¶ 19 Judgment affirmed.