MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2017 ME 46
Docket:      Lin-16-298
Argued:      February 7, 2017
Decided:     March 9, 2017

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.

OSPREY LANDING, LLC

v.

FIRST AMERICAN TITLE INSURANCE COMPANY

JABAR, J.

[¶1]  Osprey Landing, LLC (Osprey) appeals from a judgment of the Superior Court (Lincoln County, *Billings, J.*) granting First American Title Insurance Company's (First American) motion for summary judgment and denying Osprey's cross-motion for summary judgment on Osprey's complaint related to a title insurance policy issued by First American.  Osprey contends that policy coverage was triggered when a deposition and affidavits provided in litigation involving Osprey and a different party in 2012 and 2013 contained facts that Osprey alleges could constitute a potential claim for a public prescriptive easement over property covered by the policy.  We disagree and affirm.

## I. BACKGROUND

[¶2]  Osprey acquired a parcel of oceanfront property in Southport, Maine (the property) from Osprey Perch, LLC, a company owned and managed by Byron Miller, and purchased a title insurance policy (the policy) from First American.  After transfer of the parcel, Osprey sued Thomas and Janet Blevins, owners of a lot abutting the property, claiming that a deeded easement over the Blevinses' lot permitted passage of motor vehicles.  The Blevinses counterclaimed, asserting the existence of a private prescriptive easement over the Osprey property.  Osprey requested that First American defend it against the Blevinses' counterclaim, and First American declined to do so.  Osprey then sought a declaratory judgment that First American had a duty to defend Osprey in the litigation, which the trial court granted on June 26, 2013.

[¶3]  In conjunction with the Blevins litigation, Miller executed an affidavit in which he expressed his knowledge of a history of public use of a path over the property.[1]  In October of 2012, however, the Blevinses stipulated to a dismissal with prejudice of their prescriptive easement counterclaim.  Miller was later deposed in the ongoing discovery for Osprey's

---

[1]  Miller originally executed the affidavit on April 12, 2012, but did not do so under oath until May 14, 2012.

suit, and reiterated his knowledge of a history of public use of a path over the property.

[¶4]   Following the Miller deposition, Osprey sent another request to First American invoking title insurance coverage, independently of the Blevins litigation, to "put First American on notice of" Miller's affidavit and deposition, asking First American to take "appropriate action . . . to defend, vindicate and safeguard Osprey's title."   First American again declined, and procured a second affidavit from Miller, in which Miller stated that he asserted no claim to a prescriptive easement over the property, and knew of no one who could do so.  Osprey filed suit to enforce First American's purported duty to defend and indemnify Osprey.

[¶5]   First American moved for summary judgment as to all counts and Osprey filed a cross-motion for summary judgment.  On May 31, 2016, the Superior Court (Lincoln County, *Billings, J.*) granted First American's motion, and denied Osprey's cross-motion.  Osprey timely appeals.  *See* M.R. App. P. 2(b)(3).

## II.  DISCUSSION

[¶6]   Osprey contends on appeal that the court erred in granting First American's motion for summary judgment and denying Osprey's cross-motion

for summary judgment. Although Osprey parses its arguments into three separate issues, each is an iteration of a single issue: Osprey believes that Miller's deposition and affidavits create the risk of a future public prescriptive easement claim adverse to Osprey's title, and therefore, according to Osprey, the policy requires First American to take some action to either perfect Osprey's title or compensate Osprey for this perceived title defect. We disagree with Osprey that Miller's statements have created a "triggering event" requiring First American to take any action, and therefore affirm the court's judgment.

[¶7] Cross-motions for summary judgment do not "alter the basic Rule 56 standard." *F.R. Carroll, Inc. v. TD Bank, N.A.*, 2010 ME 115, ¶ 8, 8 A.3d 646. We review de novo the grant or denial of cross-motions for summary judgment, "and consider both the evidence and any reasonable inferences that the evidence produces in the light most favorable to the party against whom the summary judgment has been granted in order to determine if there is a genuine issue of material fact." *Grant v. Foster Wheeler, LLC*, 2016 ME 85, ¶ 12, 140 A.3d 1242 (quotation marks omitted). Summary judgment is properly granted when there is no genuine issue of material fact

and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Doe v. Williams*, 2013 ME 24, ¶ 10, 61 A.3d 718.

[¶8] We also review de novo the interpretation of a title insurance policy. *Travelers Indem. Co. v. Bryant*, 2012 ME 38, ¶ 8, 38 A.3d 1267. We accord any unambiguous language in the policy its plain meaning. *Id.* ¶ 9. A contract provision is only "ambiguous if it is reasonably susceptible of different interpretations or if any ordinary person in the shoes of the insured would not understand that the policy did not cover claims such as those brought." *City of S. Portland v. Me. Mun. Ass'n*, 2008 ME 128, ¶ 7, 953 A.2d 1128 (quotation marks omitted).

[¶9] The language of the policy is unambiguous. It provides that, subject to certain exclusions, First American will insure Osprey "against loss or damage . . . sustained or incurred by the insured by reason of . . . [a]ny defect in or lien or encumbrance on the title, [or] . . . [u]nmarketability of the title." Expressly excluded from coverage of the policy are "[d]efects, liens, encumbrances, adverse claims or other matters . . . resulting in no loss or damage to the insured claimant." The policy also states that "[u]pon written request . . . [First American] shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or

6

interest as insured." Finally, First American "shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to [the property], . . . or to prevent or reduce loss or damage to the insured." Despite Osprey's contentions, the facts of this case do not trigger coverage of the policy.

[¶10] The policy only imposes an obligation on First American to "provide for the defense" of Osprey's title upon Osprey's request when a third party makes a claim adverse to Osprey's title. Although Osprey's statement of material facts includes assertions of "a public right of way over" the property, First American denies those assertions, and there is no evidence in the summary judgment record to support those assertions. Because the Blevinses' counterclaim was dismissed with prejudice, there is currently no known claim against Osprey's title; Osprey itself concedes that it is unaware of any litigation claiming the existence of a prescriptive easement over the property. Osprey does not identify any cloud on its title or any other title defect that would implicate First American's duty to defend. For this reason, First American has no obligation to initiate legal action to clear Osprey's title, or to indemnify Osprey for the asserted title defect. *See Harlor v. Amica Mut.*

*Ins. Co.*, 2016 ME 161, ¶ 23, 150 A.3d 793 (stating that an insurer's duty to indemnify "runs to claims that are actually covered, in light of the facts proved" (quotation marks omitted)); *N E Props., Inc. v. Chi. Title Ins. Co.*, 660 A.2d 926, 927 (Me. 1995) ("The duty to defend is determined by comparing the allegations in the underlying complaint with the provisions of the insurance policy.").

[¶11]  Nor can Osprey identify specific "loss or damage" within the meaning of the policy caused by the alleged easement.  Other than the Miller affidavit and the Blevinses' now-resolved counterclaim, which was dismissed with prejudice, Osprey does not even identify a person or group who could potentially assert rights to a prescriptive easement over the property.  Any encumbrance on the title is therefore merely hypothetical, as is any loss or damage due to the hypothetical encumbrance.

[¶12]  Nonetheless, Osprey contends that the alleged potential title defect triggers coverage because "the fact that no individual person has asserted a public prescriptive easement claim does not eliminate the potential loss or damage to Osprey."  Even assuming that the policy covers a potential loss, rather than an identifiable loss due to a title defect, section 4(b) of the policy provides that First American "shall have the right, at its own cost, to

institute and prosecute any action or proceeding . . . to prevent or reduce loss or damage to the insured." Because there is no pending litigation, this is the only provision of the policy that might obligate First American to defend Osprey's title, and the policy vests the right to initiate preemptive legal action in First American.

[¶13] Thus, the policy—in light of Osprey's assertion that there may be a potential future claim of a public prescriptive easement over the property— gives First American the right to prosecute any action First American believes necessary. No obligation is imposed on First American under these circumstances to preemptively indemnify Osprey Landing despite the lack of proof of the existence of an easement or litigation claiming one. *See also N. Sec. Ins. Co. v. Dolley*, 669 A.2d 1320, 1322 (Me. 1996) (noting that an insurer cannot pre-litigate the issue of indemnity before fulfilling its duty to defend).

[¶14] We have never before held that the mere possibility of future claims for public easements renders title unmarketable, and will not do so here. Other courts have rejected landowners' claims against title insurers where there was merely a possibility that a future lien or encumbrance might affect title to the property, reasoning that economic unmarketability of a

property is not the same thing as unmarketability of title. *See Chi. Title Ins. Co. v. Investguard*, 449 S.E.2d 681, 682 (Ga. Ct. App. 1994); *Chi. Title Ins. Co. v. Kumar*, 506 N.E.2d 154, 156-57 (Mass. App. Ct. 1987); *Rood v. Commonwealth Land Title Ins. Co.*, 936 A.2d 488, 497 (Pa. Super. Ct. 2007). Even if economic unmarketability were covered by the policy, Osprey has failed to demonstrate that the property has become less valuable, let alone unmarketable.

[¶15]    Despite Osprey's assertions, there are currently no encumbrances and no claims adverse to Osprey's title to trigger coverage of the policy. If we were to hold that a title becomes unmarketable merely because there is a possibility that a claim for an easement could be brought in the future, an untold quantity of titles across the state would subsequently become unmarketable, resulting in uncertainty of ownership and a profusion of litigation. For the above reasons, we affirm.

The entry is:

Judgment affirmed.

Jeffrey T. Edwards, Esq. (orally), Preti Flaherty Beliveau & Pachios, LLP, Portland, for appellant Osprey Landing, LLC

Paul F. Driscoll, Esq., and James D. Poliquin, Esq. (orally), Norman, Hanson & DeTroy, LLC, Portland, for appellee First American Title Insurance Company

Lincoln County Superior Court docket number CV-2014-1
FOR CLERK REFERENCE ONLY